[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 522 
On the 4th day of September, 1877, the plaintiff, then seventeen months old, while unattended on defendant's track at the Cary avenue crossing in Hoosick Falls, was so injured by a passing locomotive as to require the amputation of a leg, and a finger of the left hand.
On a former review (105 N.Y. 164) it was determined:
1. That this court could not interfere with the finding of the jury that the plaintiff's mother was free from negligence contributing to the injury.
2. That the evidence did not authorize the jury to find that the engineer omitted to use reasonable care and diligence to avert the accident.
It appearing that as soon as he saw the child upon the crossing, he gave the signal for the brakes to be applied, and reversed his engine, doing everything that could be done to arrest the speed of the train, which he succeeded in stopping after the two small wheels of the engine had passed over the plaintiff's leg, and the judgment was reversed because there was no evidence of negligence on the part of the defendant.
The record before us contains all the evidence then under review, and in addition some testimony tending to show that the bell on the locomotive was not rung or the whistle sounded eighty rods from the crossing. The questions presented by the record are, therefore, res adjudicata, except in so far as the evidence relating to the failure to sound the whistle or ring the bell as commanded by statute may present others. The jury have found the fact to be that the defendant did not announce that the train was approaching the crossing by making such a signal as the statute requires. The General Term *Page 523 
have approved their finding. As it has support in evidence it is now controlling. But proof of defendant's negligent act could not alone charge it with liability. It was one step in that direction, but there remained another which required that it be made to appear that the injury was sustained "by reason of such neglect." And the question is presented whether there was any evidence on which to found such a finding. A finding in effect that the boy would not have been harmed had the defendant given the proper signals. If it had they would not have served as a warning to the plaintiff, then a nursing baby learning to walk, who tottered along clapping his hands as the engine moved towards him, for he would not have understood them. But it is said that he was entitled to have this bell rung so that his mother, whose duty it was to care for and protect him, would have been apprised of the approach of the train and his danger in time to have saved him from harm. While the object of the statute was to afford the best protection possible to travelers on the public highway compelled in the progress of their journey to cross railroads at grade its provisions are sufficiently comprehensive to include a case like this, if it be true that, had the signals been given, the accident would not have happened. Such a case may readily be supposed. If it should appear that while a mother was within a short distance of a railroad crossing, but detained briefly by a passing acquaintance, her child was injured by a locomotive from which no signal was given as it approached the crossing; and further that she was conscious of the presence of her child in the vicinity, and the danger to which moving trains would expose it; was so near to it that she had time to and would have rescued it had a signal been given while the train was eighty rods from the crossing, a jury would be authorized to find that but for such neglect the injury would not have happened.
Here the facts are very different. The house in which they lived stood back from the street line about twelve feet on which was a high fence containing a gate, which according to the mother's testimony was then closed and fastened. Between *Page 524 
the bottom of the gate and the ground was a space from six to eight inches in width. After nursing the infant the mother finding it was inclined to sleep laid it on the floor, and after placing a wooden chair across the outer doorway, stepped into a room opposite to arrange its cradle, and the child remaining quiet she "delayed" to arrange the room. Returning eight or ten minutes later she discovered the child was gone, and then she "leapt over the chair or took it up," and ran to the garden back of the house where potatoes and weeds were growing with stalks as high as the child, but did not see him. Then she started back to see if he had fallen into the cistern, and looked in. At that moment she heard the alarm whistle of a locomotive, and looking up, she saw a train nearer the crossing than Eldridge's, a point 452 feet distant. She ran around the house through the garden to the gate which she found closed and fastened with a string, as she had previously tied it. Looking down the avenue she saw the baby and ran to its rescue, but did not reach it in time. These facts in no wise suggest that the mother would have heard the bell had it been rung or if she did would have paid any attention to it, for had she not fastened the gate with a string which the baby could not untie, and placed a chair in the doorway to prevent his getting out? More than one hundred trains a day passed by, and hence the precaution which she described. These, with the added fact that the baby was asleep, not only seem to excuse her absence from the room, but unmistakably indicate that she did not feel any occasion to fear moving trains or heed the ringing of locomotive bells which merely indicated such passing. It does not appear that when she missed the child she would have gone directly to the railroad track had a bell been ringing, or if she had, that she would have been in time. Her fears were not in the direction of the railroad, doubtless because of the secure manner in which the gate was fastened, for had they been, with trains passing frequently and irregularly, she would have hastened to the track before exploring the garden and cistern. When her hurried search had proven unavailing, the usual *Page 525 
danger signal attracted her attention, but she was then too late, and whether the bell was ringing or not at that moment could not have made any difference in the result. In the analysis which we have briefly made of the testimony describing the situation and her conduct, no opportunity is presented for a finding that had a signal been given eighty rods from the crossing, the accident would have been avoided. Nor does she by testimony assert to the contrary. With reference to the omission to ring the bell, and its effect on her conduct, she testified on the direct examination: "That she heard the whistle; that it made two short toots. Q. Was there any bell rung? A. No, sir; I didn't hear any. Q. You could have heard one if there had been one? A. Yes, sir; I could have heard the bell coming." On her cross-examination she said: "I ran to the fence, and looking down the track saw the child; he was standing up before the accident. Q. You did not pay much attention to the bell? A. I could have heard it; I didn't hear it; I could hear it if it had rung. Q. Were you paying any attention to the bell, or were you looking for your child? A. I was paying attention, and, of course, I looked for my child; but when the whistle blowed I went to the train; if the bell was ringing I would have heard the bell before the whistle blew. Q. I want to know whether you paid any attention as to whether it was ringing or not. A. Why, I didn't hear the bell. Q. Did you listen for it? A. No, sir. Q. Did you pay any particular attention whether it was rung? A. No, sir; because I didn't hear the bell at all." Now, it will be observed that in only one answer does she assert that if the bell had been ringing she would have heard it before the alarm whistle sounded, which was clearly too late, as the result shows. In that answer she does not say how long before she could have heard it. She does not assert that had it rung she could have heard it in time to have saved the child from injury, or if such were the case, that in view of the situation her attention would have been attracted in the direction of the railroad rather than the garden and the cistern which she first visited. While her evidence indicates that she *Page 526 
was quite positive that the bell did not ring, it fails to suggest that she even entertained the thought that if the bell had been rung, the result would have been otherwise. It seems to be clear, therefore, that the evidence did not authorize a finding that had the statute relating to signals at railroad crossings been complied with, the mother would have rescued the child from danger. No other way is suggested in which the ringing could have been made available for the protection of the plaintiff.
It follows that the damages sustained were not occasioned by reason of the defendant's omission to give a signal eighty rods from the crossing. The exception to the ruling of the court on the motion for a nonsuit was well taken.
The judgment should be reversed.
All concur, except BRADLEY, J., not voting.
Judgment reversed.