WILLIAM J. FOLEY, as Administrator, etc., of JOHN FOLEY, Deceased, Appellant, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Lessee, Respondent.

*Parent and child — negligence of the parent imputed to the child — not in case of a voluntary injury — it must concur with negligence on the part of the child — walking on railroad tracks — engineer of a locomotive, when not bound to stop his train.*

A child *non sui juris* is incapable by his own negligence of forfeiting his legal rights, but the carelessness of his parents may be imputed to him. They are his keepers, to whose exclusive care and custody he is confided, and if they allow him to be heedlessly instrumental in causing his own injury they cannot recover damage therefor.

Such rule will not, however, excuse a voluntary injury or a grossly negligent act on the part of the party causing the injury, and in an action brought to recover damages for injuries sustained by their child the negligence of the parents must concur with the negligence of their child in order to constitute contributory negligence.

Walking upon the track of a steam railroad is regarded as negligence in a child *non sui juris* as well as in an adult.

Where a father and mother of a child are both at home, and know that their child is out in the street, near a place of great danger, they will be deemed to have knowledge that such child is prone to wander into forbidden places, and under such circumstances it is negligence *per se* to allow such child to wander upon a steam railroad track.

The engineer on a locomotive traveling at the rate of from forty to forty-five miles an hour is not bound to stop his train upon seeing children on the track, if he sounds the alarm when it is light, and at a place where there is no noise to drown the blast of the whistle. He has a right to assume that the children will hear the alarm and leave the track, when there is no difficulty in their doing so, and he is not bound to assume that any of them will fall in doing so.

APPEAL by the plaintiff, William J. Foley, as administrator, etc., of John Foley, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Orange on the 2d day of December, 1893, upon the dismissal of the complaint directed by the court after a trial before the court and a jury at the Orange Circuit, with notice of an intention to bring up for review on such appeal all exceptions to the orders and rulings of the trial court upon which said judgment was based.

*John M. Gardner*, for the appellant.

*Ashbel Green* and *A. S. Cassedy*, for the respondent.

DYKMAN, J. :

This is an action for the recovery of damages for causing the death of the plaintiff's intestate, who was his own son, about four years and four months old.

The plaintiff resided at New Windsor, on the west side of a public road leading from the city of Newburgh to Cornwall, and about 600 to 700 feet from the place where the accident occurred. He had a wife and two children residing with him, his son John, the deceased, four years and four months old, and a daughter Mamie, aged seven years. The children were playing near the house with Annie McCullough. The mother saw them all playing about 140 feet from the house at half-past two o'clock in the afternoon. The father saw them playing within about fifty feet of the house an hour before the accident. That is the last that either father or mother saw of the children until after the occurrence. The mother had seen Anna McCullough playing with her children on one or two occasions previous to this. On the afternoon of November 13, 1892, which was Sunday, Anna McCullough started with the other two children down the highway, and after passing some brickyards they started and walked up the track of the West Shore road toward Newburgh. They passed over one culvert or trestle above the Gillie's yard and passed the Walsh yard, and were walking over the second culvert or trestle opposite the Christie yard. When upon the culvert they heard the locomotive whistle blow, looked back and saw the cars coming. John, the deceased child, then tripped and fell upon the trestle, and was still down when the engine reached him. After the train passed, the boy was found under the culvert, about the fourth tie from the north end, dead. Across the culvert or trestle were square ties or timbers, about eight or ten inches apart, upon which the track was laid, the stringers running at the side of the track about six inches in height. The boy was struck by the Newburgh local, which was running north. There were no highways crossing the tracks of the railroad between Cornwall and the city of Newburgh, a distance of about four miles, and the accident occurred within those limits south of the city. The track is straight for three-quarters of a mile or more south of the culvert. The train consisted of three coaches and a

combined car, locomotive and tender. The air brakes and appliances were in good order. When about 1,000 or 1,200 feet away the engineer, looking through the cab window, saw something upon the track and immediately blew the whistle. He then saw they were two girls. Both left the track, and then one turned and came back. He blew the whistle twice. When he saw one girl go back he applied the air brakes with one hand and reversed the engine with the other, and when he was within about 200 feet of the trestle for the first time he saw this boy. He was down on the trestle, and only saw him from his body up. He could not see his arms, and the boy was lying with his face flat down. When the girl started back the engineer saw something which he thought was a dog, but which he immediately discovered was something else and it proved to be the deceased boy. At the time of the accident the train was running at a speed of from forty to forty-five miles an hour, which is not an unusual rate at that place or at other points on the road between stations where the track is clear. To stop such a train, running at that rate of speed, would require a distance of about 1,000 feet. At the close of all the testimony upon the trial the defendant moved for a nonsuit on the ground of contributory negligence of the plaintiff, who was the father of the deceased, and also of the deceased, and that no negligence was shown on the part of the defendant, and the motion was granted. The plaintiff then appealed from the judgment which was entered in the action to the General Term.

The nonsuit was based upon the failure of the proof to establish negligence against the defendant, but the question of the contributory negligence of the deceased is also presented upon this appeal, and both questions are, therefore, to be examined.

While the deceased child was *non sui juris*, and was incapable of forfeiting his legal rights by his own negligence, yet, if his parents were negligent, their carelessness may be imputed to him. They were his keepers, to whose exclusive care and custody he is confided in contemplation of law. If, therefore, they allow him to be heedlessly instrumental in his own injury they cannot recover damage therefor. Such a rule would permit them to recover for injury resulting from their own misconduct. While the rule, however, will not excuse a voluntary injury or a grossly negligent act, it has

full application to a case like the present where neither is proven. Walking upon the track of the railroad would be regarded as negligent in an adult, and so it must be deemed negligent in the deceased child. If the rule now is as it seems to be (*Kunz* v. *City of Troy*, 104 N. Y. 351), that the negligence of parents must concur with the negligence of the child to constitute contributory negligence, we think both are manifested by the testimony in this case.

The child was unlawfully upon the railroad track with two other children, one nine and the other seven years of age. They had been away from their parents over one hour; they were near a railroad which was in full operation, and, therefore, palpably a place of danger. The father and mother were both at home, and knew their children were out on the street near a place of great danger. They must be deemed to have possessed knowledge that such children were prone to wander into by and forbidden places.

We think it was negligence *per se* to have allowed those children to wander away as they did.

In relation to the negligence of the defendant, it is to be said that there are no highway crossings for several miles below the city of Newburgh, and, therefore, there was no reason why the train should have diminished its speed. There is no proof that the track or any of the appliances of the train were in disorder. The engineer was on his guard, and his testimony is all we have to prove what he saw. He did see the children and sounded the alarm, but he was not then bound to stop his train, as it was light and there was no noise to drown the blast of the whistle; he had a right to assume that the children would hear the alarm and leave the track, as there was no difficulty in their so doing. They had only to step aside a few feet upon the other track, and he could not assume that either of them would fall.

"All the engineer was bound to do after the discovery of the peril was to use reasonable diligence and care to avoid it." (*Chrystal* v. *Troy & Boston Railroad Company*, 105 N. Y. 164; 124 id. 519.)

We find the evidence insufficient to sustain a finding that he did not use reasonable care or was guilty of negligence.

Upon the trial the testimony to show that people about New Windsor were in the habit of going up and down the railroad track at the point in question was excluded, and that exclusion is now

assigned as error. Such testimony would only show that many people committed trespass upon the railroad, and it was properly excluded.

Our conclusion is that the judgment should be affirmed, with costs.

PRATT, J., concurred; BROWN, P. J., not sitting.

Judgment affirmed, with costs.