[Tennessee Coal, Iron & Railroad Co. v. Hansford.]

# Tennessee Coal, Iron & Railroad Co. v. Hansford.

|125|349|
|131|276|

*Action against a Railroad Company to recover Damages for alleged Negligence of Plaintiff's Intestate.*

1. *Negligence; right to cross railroad track.*—While a person has a right to cross over the railroad track whenever he may have occasion to do so still before attempting to cross he must stop, look, and if necessary, listen for approaching trains; and if, after having thus assured himself that the way is clear, while attempting to exercise the right of crossing the track when it is dark, he is injured by the negligence of the employés of the railroad company in failing to give the signals of warning as required by the statute, or in failing to have a headlight upon the engine, as it approached the place where he crossed, the railroad company is liable for the injuries inflicted.

2. *Same; same; fact that party injured on a railroad was employed by defendant in another branch of its service immaterial.*—In an action to recover damages for injuries resulting in the death of plaintiff's intestate, which occurred upon a railroad track at night time, where the negligence charged was that the employés of the defendant in charge of the locomotive which ran over the intestate gave no signals of approach and did not have the headlight on the engine lighted, the fact that the deceased, who was on the track of the defendant at the time of the injury, was employed by the defendant in another branch of its services, separate and distinct from the operation of the railroad was immaterial and imposed no greater duty upon the defendant at the time and place mentioned, than that due to any other person on the track, whether exercising the legal right of crossing it or as a trespasser.

3. *Same; same; when person a trespasser.*—While a person has a right to cross over a railroad track wherever he has occasion to do so, he has no right to linger upon the track or walk along the same, or upon the right of way of the defendant in dangerous proximity to the track; and upon doing so, he became a trespasser, and is not entitled to recover damages for personal injuries inflicted upon him while so trespassing upon the track, although the defendant may have been guilty of

negligence in failing to give warning of approach, or in failing to have the headlight burning, if the accident was at night.

4. *Same; same; same.*—Where a person approaches a railroad track for the purpose of crossing over it, his duty to stop and look and listen must be performed while the person is so near the track and so immediately preceding his effort to cross over the track as to remove any danger from a train coming upon the tracks between the time he stopped, looked and listened and his attempting to proceed across the track; and though he stopped at the track, if he lingers there, after looking and listening, until the train, not in hearing when he stopped, looked and listened, has, in the mean time, come upon the scene and collides with him when he does attempt to cross, he is guilty of contributory negligence.

5. *Same; same.*—Where one who is about to cross over a railroad track sees a train approaching and misjudges its speed or is not able to cross before the train reaches the point of crossing; but makes an attempt and is struck and injured, he is guilty of negligence, which precludes his recovery for any negligence on the part of the railroad company or its employes, unless its agents were wanting in due care to conserve the safety of such person after they became aware of his peril.

6. *Pleading and practice; sufficiency of judgment on demurrer.*— To constitute a sufficient judgment on demurrer there should be a formal entry of the submission on demurrers and the specified pleadings, a recital of the consideration thereof by the court and formal adjudgment such as "It is therefore considered and adjudged by the court that the demurrers be and they are hereby" overruled or sustained, as the case may be; and a judgment entry which merely recites that the defendant's demurrers were overruled or sustained, is not sufficient as a judgment upon such demurrers and will not be reviewed on appeal.

7. *Action against a railroad company for negligence; admissibility of evidence.*—In an action against a railroad company to recover damages for the killing of the plaintiff's intestate who was attempting to cross the defendant's track when it was dark, where the charge of negligence is predicated upon the failure of the defendant's agents or employés in control of the engine to ring the bell or sound the whistle, and in the failure to have the headlight on the engine burning on its approach to the place of the accident, and it is further alleged that people were in the habit of crossing the railroad track where the accident occurred, evidence tending to show the number of people who crossed the track at the point of injury, the time

[Tennessee Coal, Iron & Railroad Co. v. Hansford.]

at which they crossed and whether there was a headlight.
burning on the engine, or whether the bell was rung or the
whistle was blown at the time of the injury, and whether the
witness who testified to such facts had an opportunity of see-
ing and hearing, is relevant and admissible.

8. *Same; same.*—In such a case, the custom of the defendants in
reference to lighting the headlight on the engine is immate-
rial to any question involved, the question being as to whether
there was a headlight burning on the particular occasion in-
quired about; and evidence relating to such custom is irrelev-
ant and inadmissible.

9. *Same; same.*—In such a case, evidence tending to show that the
engine in question had no pilot or cow-catcher on it is wholly
irrelevant and immaterial, there being no negligence charged.
in the complaint involving such inquiry.

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

This action was brought by M. F. Hansford, as ad-
ministratrix of Thos. Hansford, deceased, against the
Tennessee Coal, Iron & Railroad Company, to recover
damages for the alleged negligent killing of the plain-
tiff's intestate.

The complaint as amended contained twelve counts.
The court gave the general affirmative charge in favor
of the defendant on each of the counts except the sev-
enth. The averments of the seventh count are suffi-
ciently stated in the opinion. The defendant demurred
to the seventh count, but it is unnecessary to set out
these demurrers, the minute entry of the court not
being sufficient to present them for review on the pres-
ent appeal. The said minute entry, relating to the de-
murrers, after referring to the complaint being amended,
recites as follows: "Whereupon the demurrers to the
complaint are by the court heard and overruled."

To the seventh count of the complaint there were
filed the plea of the general issue and five special pleas
setting up the contributory negligence of the plaintiff's
intestate.

The plaintiff's intestate at the time of his death was
in the employment of the appellant at its furnaces at
Ensley, Ala. He worked at the boilers of appellant. He-

was killed while on his way home from work at 5:30
P. M.    He lived across the railroad tracks a mile or
more, and had to cross the railroad tracks to get from
his place of work to where he lived.    At the time of his
death the section crew of defendant was engaged in
taking the tools and rails from their push car in front
of or near the tool house, and the engine of appellant,
which was engaged in the work of removing the hot
and molten cinders from the furnaces to the cinder
dumps, had just emptied the cinder pots at the cinder
dump, and was returning to the furnaces.    The testimony
of some of the witnesses for plaintiff tended to show
that there was a path from the furnaces across the rail-
road tracks at the point where the tool house is located,
which was considerably traveled by employés of defend-
ant at its furnaces in going to and returning from
work, and that the travel over this path was principally
in the morning and about 5:30 in the evening.    The
testimony of the plaintiff also tended to show that it
was about dark when the accident happened.    The tes-
timony fails to show that the decedent was seen until
he got to the tool house and to the tracks which passed
in front of the tool house.    One witness testifies that he
saw him step up on the track at the side of the tool house
towards the cinder dump.    Other witnesses saw him
standing on the side of the track or between the side
track and the main line at short intervals before the ac-
cident happened.    Plaintiff's first witness, Dode Bloc-
ton, testified that he first saw decedent after the train
had struck him and dragged him along, and as he was
about to go under the wheels; that he did not see him
when he was first struck, and had not seen him at all un-
til after he had been struck and carried along by the en-
gine; that when he first saw him after he was struck,
he was in front of the tool house being carried along
by the engine; that when he first saw him he was right
about where the path crosses the railroad, but at that
time he had already been struck and was being carried
under.

Plaintiff's next witness, Will Black, testified that
decedent was 20 feet from the path on the track at

the time he was struck; that the path was on the side of the tool house nearest to the cinder dump; that when witness first saw him (decedent) he was stepping on the railroad track right in front of the tool house; when witness next saw him he was 30 feet further down the track from the tool house; witness had not seen him between these times. Witness saw him on the railroad track in front of the tool house, and next saw him 30 feet further down the railroad track towards the dump, and four minutes elapsed between the two times witness saw him.

Plaintiff's next witness, Nelson Goree, testified that he was unloading the tools off the car and had not been paying any attention to Hansford, the deceased; saw him standing between the two tracks when witness was unloading tools for two or three minutes, and then saw him struck· The decedent was standing still between the side track and the main line, clear of all trains. He was nearer the side track than the main line, and as near as witness could state, was within 3½ feet from the main line. That deceased was just above the tool house in the path when witness first saw him, and then in a few minutes after he was struck, and witness did not see him any more in the meantime, nor until after he was run over. He did not see him at all when the train struck him nor when the train was carrying him on; did not see him until after he was killed.

These were plaintiff's only eye-witnesses to the accident.

Defendant's witness Mandy testified, that he was about 100 yards above the tool house in front of the engine that ran over Hansford at the time he was killed. Witness was between the first and second switches that led into the furnace from the main line. He first saw the engine after it left the dump; saw it before it got to the tool house. Did not see Hansford killed and didn't know about it until it was all over. From where witness was standing he could see a quarter of a mile up the track towards the tool house, as near as he could remember. Saw the section gang and saw them get off the track. That was all he saw on the track. Did not see anybody

get on the track. Did not see him (Hansford) struck, did not see him get on the track, and did not see him at all. Witness looked down the track as the section gang got off the track, and never looked any more after that until the engine came along right by the side of witness. Witness saw the section boss get off just before the train passed by, just half a minute before—"not that long, I expect— just a few seconds. I don't know whether Mr. Hansford was on the track when the section foreman got off or not. If he had got on there and stayed on there I think I would have seen him. I don't know whether he was on or not."

Defendant's witness, Sam Johnson, testified: "I was working in the defendant's section gang when Hansford was killed, and saw him killed. When I saw him he was standing in the middle of the track. I saw him when the engine hit him, and had seen him before the engine hit him for five or six minutes. During that time he was standing on the track. He spoke to Mr. Perdue while he was standing there, and told him to come on and go home with him. Mr. Perdue told him all right he would go as soon as he got through with what he was doing. He was on the track facing Mr. Perdue, and in the same place he was when he was killed, when he spoke to Mr. Perdue."

Defendant's witness Perdue testified as follows: "I knew Hansford in his lifetime and was present when he was killed. I was standing in front of the tool house, just in front of the door, and Hansford was on the track opposite the door. He was standing on the main line track to the dumps. I saw the engine strike him. At that time he was near the center of the track. He had been standing in the center of the track to the best of my recollection two or three minutes—not longer than that. He said to me, 'Let's go home,' and I said, in a few minutes. When he said that he was standing where he was struck on the track. After I said that, I ordered the negroes to shove the push car down there to put off some rails, and I hadn't hardly said the words before the engine dashed up and struck him. It was about two or three minutes after I spoke to him that the engine dashed up.

During that time he was standing on the track in the same place. His face was towards me when he was struck—towards the tool house. When he called to me I looked around, and he stopped when he said the words, and of course he was looking towards me when he directed the remarks to me. After he spoke he staid right in the same place till he was struck. I did not see the engine till it struck him. At the time he called all the tools had not been taken off the car; I think there were a few tools left to take off, and after two or three minutes, while we were taking them off, the accident took place."

Plaintiff's testimony also tended to show that it was dark and there was no head-light burning on the engine that ran over the decedent; that no bell was ringing and no whistle was blown after the engine left the cinder dump. That the engine did not stop after running over decedent until it had reached its usual stopping place to go into the furnace switch, a distance of 200 yards from the tool house. That it was running when it passed the tool house from 6 to 12 miles an hour. One of the plaintiff's witnesses testified that the engine was visible all the way down the track from the dump, and that he saw it on the dump and all the way down. Some of the plaintiff's testimony tended to show that there was a path from the furnaces which crossed the railroad tracks of the defendant near the tool house. The witnesses who testified to the existence of this path, except the witness Black, placed it on the side of the tool house towards the coal bin. Black placed it on the side of the tool house towards the cinder dump. Plaintiff's witness Brown testified that the only path was on the side of all the railroad tracks from the furnace; did not cross any of the tracks; stopped 50 yards from the tool house, and ran from a spring on the far side of the railroad tracks to some little houses occupied by negroes. Other testimony of defendant tended to show that there was no path across the tracks past the tool house. The largest estimate of the daily travel across this path was 20 persons passing in the morning and 20 in the evening. Defendant's testimony and some of plainttiff's tended to show

that those traveling across the track passed not at any particular place but everywhere within a distance of 500 yards from the cinder dumps to the coal bin. The testimony showed that the nearest houses to the place of the accident were 200 yards away across all the tracks from the furnaces, and consisted of 10 or less little negro huts. Other than these, the nearest houses were situated one and one-half mile away. Defendant's testimony tended to show that it was not good dark at the time of the accident, and that the head-light was burning then.

During the examination of Dode Blocton as a witness for the plaintiff he was asked "To state how many people, if any, pass over that track, along that path from the furnace daily?" The defendant objected to this question, because it called for illegal and immaterial evidence. The court overruled the objection and the defendant duly excepted. This ruling constitutes the basis of the 2d assignment of error. This witness was also asked the following question: "Now tell whether or not before you saw the man under the train you heard any bell or whistle on that engine?" The defendant objected to this question, because it called for irrelevant and immaterial evidence, and duly excepted to the court's overruling its objection. This ruling constitutes the basis of the 3d assignment of error. The witness answered that he did not hear the bell and that no whistle was blown. The 4th assignment of error was based upon the court's overruling the defendant's objection to the following question, which was propounded to the witness Blocton: "State to the jury whether if there had been a head-light on this engine you could have seen it?"

Upon the examination of one Lewis, a witness for the plaintiff, he was asked the following question: "According to your best judgment, as near as you can arrive at it, about how many people work for the furnace?" The defendant objected to this question, because it called for irrelevant and immaterial evidence. The court overruled the objection, and the defendant duly excepted. This ruling constitutes the basis of the 7th assignment of error. The witness answered about three hundred. The 9th assignment was based upon the court's overruling

the objection to the question propounded the witness Mrs. T. Hansford: "What hour did he, (the deceased) go to work in the morning, and what hour did he return from the furnaces?" The 10th assignment of error was based upon the court's overruling the defendant's objection to the following questions which were propounded to one of the witnesses for the defendant: "Isn't it nearer to cross by the tool house going in the direction in which Hansford lived?" The 11th assignment of error was based upon the court's overruling defendant's objection to the following question, which was propounded by the plaintiff to one of the defendant's witnesses: "If you had noticed for the headlight when it started up the dump, could you have seen it?"

Upon one of the witnesses for the defendant testifying that he did not know exactly how many people crossed the track by the tool house a day, and did not know whether as many as 20 crossed the track at that point, the plaintiff then asked the witness the following question: "There might have been more and there might have been less, mightn't there?" The defendant objected to this question, because it called for a conjecture or mere opinion on the part of the witness. The court overruled the objection, and the plaintiff duly excepted. This is the basis of the 13th assignment of error. The rulings of the court which are called in question by the 5th, 6th, 8th and 12th assignments of error are sufficiently shown in the opinion.

The court in its oral charge to the jury, among other things, instructed them as follows: "It may be that out in country some pedestrian is about to cross the track ahead of the approaching train, but nevertheless because of the infrequency of such crossing, the law don't impose on the engineer the duty of ringing the bell or blowing the whistle at such place. Nevertheless it is the duty of the engineer not to go over such crossing without observing some precautionary measure. It isn't his duty to ring the bell or blow the whistle; it isnt his duty to keep a special lookout, but it is his duty to keep a general lookout." The defendant thereupon in the presence of the

jury and before it retired excepted to the following por-
tion of the oral charge: "But it is his duty to keep a gen-
eral lookout."

The defendant also separately excepted to the follow-
ing portions of the court's general charge which are num-
bered for the convenience of reference: (1.) "Damages in
a case of this kind are what the law calls punitive.   This
is damages imposed by way of punishment for the
wrongful killing of a person."   (2.) "Now if the plaintiff
has proven by a preponderance of the evidence to your
reasonable satisfaction the allegations of the complaint,
then she is entitled to recover, unless the defendant
proves that the deceased was a trespasser on the track,
and was, therefore, guilty of contributory negligence,
in which case the plaintiff would not be entitled to re-
recover."   (3.) "The plaintiff must prove, in the first
place, to the reasonable satisfaction of the jury that the
defendant was guilty of negligence.   Then that entitles
her to recover unless the defendant proves to the reason-
able satisfaction of the jury the negligence of the plain-
tiff."

The defendant requested the court to give to the jury
the following written charges, and separately excepted to
the court's refusal to give each of them as asked: (1.)
"If the jury believe the evidence they must find for the
defendant under the seventh count of the complaint.
(2.) "The defendant's employés on its locomotive engine
did not owe the intestate the duty of keeping a lookout
for him, as the engine approached the point where he was
killed."   (3.) "If the jury should find for the plaintiff
they can not award damages for the purpose of punishing
defendant."   (4.) "If the jury believe from the evidence
that the plaintiff's intestate was crossing the defendant's
track at the time of his death, the only duty the defend-
ant owed the intestate was not to injure him wantonly,
willfully or intentionally."   (5.) "If the jury believe
from the evidence that the plaintiff's intestate at the
time of his death was crossing the track of defendant,
then he was a mere licensee and entitled only to the care

due to such a licensee." (6.) "The duty owing to a licensee is not to injure him willfully or wantonly." (7.) "If the jury believe the evidence they must find that the intestate was guilty of contributory negligence." (8.) "The burden is on the plaintiff to show that at the time of the intestate's death, the servants of the defendant in charge of the engine and train that ran over intestate knew that many persons passed and repassed over defendant's track at the point of the accident in order that under the evidence any higher or more exacting duty should be required of defendant's servants in charge of its train because of such fact." (9.) "There was nothing in the locality and surroundings of the place of the accident to impose any higher measure of duty on defendant as to intestate than the ordinary duty due to persons crossing a railroad track." (10.) "If the jury should find for the plaintiff, the measure of her damage should be such amount as the jury may find from the evidence was the pecuniary value of intestate's life at the time of his death." (11.) "If the jury find for the plaintiff, they can award only nominal damages." (12.) "If the jury believe that the intestate was crossing the track at the time of his death, the defendant still did not owe him the duty to keep a special lookout for him." (13.) "Even if the jury find from the evidence that intestate was crossing defendant's track at the time of his death, and that the defendant's servants failed to ring the bell or blow the whistle or have a head-light burning or keep a lookout ahead, still the jury must find for the defendant." (14.) "If the jury believe the evidence they must find that the decedent Thomas Hansford was a trespasser on the defendant's track at the time of his death." (15.) "The jury are not authorized to find from the evidence in this case that the intestate was crossing defendant's track at the time of his death." (16.) "The defendant's engineer did not owe the intestate the duty of blowing the whistle as his engine approached the point of the accident." (17.) "The defendant's fireman did not owe the intestate the duty of ringing the bell as the engine approached the place of the accident." (18.) "It was not the duty of the defendant's

servant on its engine that ran over and killed intestate to ring the bell or blow the whistle as the engine approached the point of the accident." (19.) "If the jury should find for the plaintiff, they must give such damages as will compensate the estate of the plaintiff's intestate." (20.) "If the jury should find for the plaintiff, they must give such damages as will equal the money value of the life of the deceased to his next kin." (21.) "If the jury believe there was a path where plaintiff's intestate was killed, and that he was crossing defendant's track at it, the existence of the path imposed no higher duty on defendant in operating its trains towards persons crossing its tracks at the path than at other places of similar character where no path existed." (22.) "The jury are not authorized to charge the defendant in this case because of any negligence on the part if its employés in the matter of keeping a lookout as the engine approached the point of the accident, if the jury believe such employés were guilty of such negligence."

There were verdict and judgment for the plaintiff, assessing his damages at $3,000. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

WALKER PERCY and WILLIAM I. GRUBB, for appellant, cited Stringer v. Ala. Mineral R. R. Co., 99 Ala. 397; L. & N. R. R. v. Hairston, 97 Ala. 351; Haley, Admr. v. K. C. M. & B. R. R. Co., 21 So. Rep. 357; R. R. Co. v. Meadors, 95 Ala. 137; A. G. S. R. R. Co. v. Linn, 103 Ala. 139.

GREGG & THORNTON and WARD & HOUGHTON, contra, cited S. & N. R. R. v. Sullivan, 59 Ala. 272; S. & N. R. R. v. Shearer, 59 Ala. 672; West v. Thomas, 97 Ala. 622; A. G. S. R. R. v. Arnold, 80 Ala. 600; s. c., 84 Ala. 159; M. & E. R. R. v. Thompson, 77 Ala. 456; Parkhurst v. Johnson, 45 Am. Rep. 28.

DOWDELL, J.—This is an action for damages for an alleged negligent killing of appellee's intestate by a locomotive engine while being operated by the servants

and employés of the defendant company over its track or road. The amended complaint contained twelve counts. The court below gave the affirmative charge for the defendant on all of said counts except the seventh. This count alleges in substance that appellant, the Tennessee Coal, Iron & Railroad Company, on December 7th, 1896, owned and operated a railroad, engines, locomotives and cars and other appurtenances thereto belonging, at or near a town or village known as Ensley City, in said county of Jefferson and State of Alabama; that there was a footway or path leading across one of defendant's said railroads, over which many persons passed daily about 5:30 P. M., which the defendant, its agents and servants well knew; that on said date, and about 5:30 P. M., said time being about dark, the plaintiff's intestate was walking along said path at a point where the same crosses said railroad when the defendant, its agents or servants, without giving any notice of the approach of one of its engines or locomotives to said crossing by ringing a bell or blowing a whistle, and without the use of a headlight on said locomotive, which it was its duty to do in the premises, did at the time aforesaid, and when the plaintiff's intestate was crossing said track at said crossing, violate its said duties, and negligently propelled said engine or locomotive along said track towards and across said crossing, causing said locomotive or engine to strike, run over and kill said intestate.

To this count six pleas were filed by the defendant, the first being the general issue and the remaining five setting up contributory negligence on part of plaintiff's intestate. On this state of the pleading issue being joined, a trial was had, resulting in a verdict for the plaintiff.

The charge of negligence in the complaint is predicated upon acts of omission on the part of the defendant and consisted in the failure of defendant's agents or employes in control and management of the locomotive to ring the bell or sound the whistle, and in the failure to have a headlight burning on its approach to the place of the accident. These are the only acts of negligence averred as a proximate cause of the injury. There is

no charge of negligence on the part of defendant or its servants in control of the engine or locomotive in a failure to maintain a lookout, and under the issue so made up, the question of the duty of maintaining a lookout whether general or special was wholly irrelevant.

While the said deceased had the right to go upon the defendant's railroad track for the purpose of crossing the same on his way to his home, and this right of crossing said track he had, regardless of the existence of a pathway, without being a tresspasser in the exercise of such right, yet under the averments in the complaint this right was only a crossing right, to be exercised immediately after his ascertaining by his stopping sufficiently long to look and listen to see that he could proceed with safety to himself. He had no right to linger upon the track or walk along the same, or upon the right of way of defendant in dangerous proximity to the track, the doing of which would constitute him a tresspasser.—*L. & N. R. R. Co. v. Hairston*, 97 Ala. 352; *Stringer v. Ala. Mid. R. R. Co.*, 99 Ala. 397; *Ensley R. R. Co. v. Chewning*, 95 Ala. 24.

The burden of proof was upon the plaintiff to show that deceased was killed by defendant's locomotive while the deceased was in the exercise of this right of immediate crossing and without delay, and that the acts of negligence alleged in the complaint on the part of defendant were the proximate cause of the injury. The fact that plaintiff's intestate was himself an employé of defendant company, being employed at work at its furnaces, was wholly immaterial under the issues in the case. Under the averments in the complaint, his relation to the defendant company as an employé in another and different branch of its service, imposed no greater duty upon the defendant at the time and place mentioned than that due to any other person exercising the legal right of crossing its tracks. We think that the evidence as disclosed by the record fails to show that the plaintiff has discharged the burden placed upon her by the law in making out her case. There is no testimony by an eye-witness to the occurrence, that the decedent was crossing the tracks at the time he was struck by the loco-

motive, nor any evidence from which we think such fact could be reasonably inferred, while on the contrary, the testimony of the eye-witnesses to the killing, as well as the tendencies of the whole evidence, go to show that the deceased was not crossing nor in the act of crossing, as he had a right to do, at the time of the injury, but was standing or lingering upon the track.

The plaintiff's witness, Dode Blocton, expressly disclaims having seen decedent at all until after he had been struck and carried along the track by the engine. His testimony throws no light on where he was when struck or what he was doing when he was struck. Will Black, another witness for the plaintiff, testifies that he first saw him step on the track above the tool house toward the cinder dump and walk along the track twenty feet further down than the path, where he was struck by the engine. His testimony clearly shows that the decedent was a trespasser—*Ensley Ry. Co. v. Chewning*, 93 Ala. 24. Nelson Goree, another of plaintiff's witnesses, testifies that when he first saw the decedent he, decedent, was standing between the side-track and the main line in front of the tool house. He then saw him no more for two or three minutes, after which the engine came along past the tool house and struck him. The witness did not see him when he was struck. He saw him standing within three and one-half feet of the main track two or three minutes before the train came along, and saw him no more then until after he was killed. According to this witness, the decedent had been standing for two or three minutes on the right of way between the two tracks and in dangerous proximity to them. This was not the exercise of his legal right of immediate crossing.— *Stringer v. Ala. Mid. R. R. Co.*, 99 Ala. 397; *L. & N. R. R. Co. v. Hairston*, 97 Ala. 351.

Johnson and Perdue, witnesses for the defendant, each testify that the decedent stood in the center of the main line from two to five or six minutes waiting for Perdue to finish unloading tools from a hand-car, and to go home with him. These are the only eye-witnesses to the accident, except the witness, Mandy. This witness testifies that he was one hundred yards from the

place of accident, waiting to relieve the engineer of the engine which ran over the decedent. He saw the engine coming down the track towards the tool house. He did not see Hansford, the decedent, on the track at any time, did not see him struck by the engine and didn't know he was killed until he was told about it some time after. He saw the section foreman and some of his men get off the track, and says he did not see anybody get on the track after the section foreman got off. This witness says: "I looked down the track as the section gang got off the track, and I never looked any more after that until the engine came along right up the side of me." * * * "I saw the section boss get off just before the train passed by—just a half a minute before, not that long, I expect—just a few seconds. I don't know whether Mr. Hansford was on the track when the section foreman got off or not. If he had got on there and stayed there I think I would have seen him. I don't know whether he was on or not." It is clear that this witness does not undertake to testify to the positive fact that Hansford was not standing on the track, or a knowledge of that fact. It was about dark and he was one hundred yards away, and he says that he did not look back down the track any more after the section foreman got off; that he thinks he would have seen decedent if he had got on the track and stayed there, but as a conclusion of his whole statement, the witness says he does not know whether Hansford was on the track or not. We do not think the testimony of this witness raises any conflict in the evidence as to the fact that the decedent at the time of the accident was lingering upon the track or in dangerous proximity, and was not exercising his legal right of an immediate crossing. The statement by the witness that he "*thinks* he would have seen the decedent if he had gotten on the track and stayed there," was at most but an expression of opinion, for he says he did not look back after the section foreman got off the track, and is not the equivalent of an affirmative statement of the fact that witness would have seen him if he had gotten on the track and stayed there. Moreover, it clearly appears that even in the exercise of the legal right of immediate crossing,.

that if he, the decedent, had stopped to look and listen, as it was his duty to do, there was nothing to prevent his seeing the approaching locomotive and to have saved himself from the injury. If he did not stop and look and listen, or if he did and then attempted to cross immediately in front of an approaching locomotive, in either case he was guilty of negligence—*Central of Ga. Ry. Co. v. Foshee, ante* p. 199.

We decline to consider the assignments of error as to the action of the court upon demurrers to the complaint, for the reason that the record shows no judgment by the court upon these demurrers. What is stated in the record shows nothing more than a mere memorandum or recital by the clerk, and not a consideration and adjudging by the court necessary to constitute a judgment. The rulings of the court on the admission of evidence raised by assignments of error numbered 2, 3, 4, 7, 9, 10, 11 and 13 are free from fault as the tetimony tended to prove the allegations of the complaint.

Whether or not many persons worked at the furnaces, and crossed the track at the point where Hansford was killed, the time of the crossing, whether there was a headlight burning on the engine, or the bell was rung or whistle was blown at the time of the injury, whether the witnesses had the opportunity of seeing and hearing the facts stated, were pertinent to the inquiry.—*L. & N. R. R. Co. v. Orr*, 121 Ala. 489; *M. & C. R. R. Co. v. Martin*, 117 Ala. 367.

A witness may testify to the absence of a thing or the non-appearance of an event, if it is shown he was in a position to see and hear the thing inquired about.—*Tesney v. State*, 77 Ala. 33; *McVay v. State*, 100 Ala. 110; *A. G. S. R. R. Co. v. Linn*, 103 Ala. 134.

The assignments of error numbered 5, 8 and 12 are based on objections to testimony calling for the custom of defendant with reference to lighting the headlight of the engine. This was immaterial, the question being the carrying of a head-light burning on the particular occasion.

The 6th assignment is based upon the admission of evidence against defendant's objection tending to show

[Thompson v. Town of Luverne.]

that the engine in question had no pilot or cowcatcher. No negligence charged in the complaint involved this inquiry; it was immaterial under the issues, and we think calculated to prejudice the minds of the jury, and its admission against objection was error.

What we have said with reference to the issues and the evidence relevant to such issues is sufficient to dispose of other assignments of error based on exceptions to parts of the oral charge, as well as to refused written charges requested by the defendant, without a more particular discussion of those exceptions.

For the errors indicated in the foregoing opinion the judgment of the court must be reversed and the cause remanded.