# Birmingham Railway Light & Power Company *v* Jones

*Injury to Person on Track.*

(Decided Dec. 19, 1907.   45 So. Rep. 177.)

1. *Street Railroads; Duty to Trespassers; Lookout; Infants.*—The general rule that a railroad owes no duty to a trespasser to keep a lookout for him, and which applies equally ˙to infants with adults, except where infants are enticed on the track, applies to street cars operating along city streets, unless the road bed is so placed in the street as to become a part and parcel of the street.

2. *Same; Railroads; Not Flush With Surface of Street; Right of Public to Use of Roadbed.*—Where a railway is built in a street in such a way as to become a part of it, that is, when the ties are embedded below the surface and the rails are flush with the surface, it becomes a part of the street and the public have the same right to use it as any other part of the street, but must observe care in looking out for approaching cars, with the consequent duty on the part of the servants of the railroad to keep a lookout for persons or vehicles; but where the ties are laid above the surface of the street and the rails placed thereon, thus raising them above the surface, such roadbed does not constitute a part of the street, and the public have no more right to the use of it than if it was not a street or road at all, and no duty rests on the operatives to keep a lookout for persons on it.

3. *Railroads; Injuries to Persons on Track; Trespasser.*—A person may, for the purpose of crossing a railroad, do so without becoming a trespasser, but if he lingers on it or walks along it at a place where he is not entitled to go he becomes a trespasser to whom the company owes no duty to keep a lookout.

4. *Street Railroads; Operation; Duty to Keep Lookout for Persons Rightfully on Track.*—It is the duty of a motorman running a street car in the street of a populous town or city, under the common law, to keep a lookout for persons rightfully on the track and liable to be run over by cars.

5. *Same; Actionable Injuries; Actionable Negligence.*—Actionable negligence is a failure to discharge a legal duty to the person injured, and although a street car company may owe the duty to keep a lookout for persons on the track rightfully, it owes no such duty to a trespasser and hence the failure to keep a lookout is not actionable.

6. *Same; Trespasser.*—A child sixteen months old sitting or lying on the end of one of the ties of defendant's railroad is a trespasser, although the road bed is in the street, if the ties are laid on the surface of the street and the rails attached thereto, thus raising the track above the surface.

7. *Same; Duty to Trespassers; Lookout; Instruction.*—A charge asserting that if defendant's motorman was not keeping a proper and diligent lookout, and the accident occurred within the limits of an incorporated city, the motorman would be guilty of negligense, is error in an action against the street railroad company for an injury to a trespasser; not withstanding the rule that if from the locality of circumstances known to the company there is reason to apprehend that the track may not be clear from human beings, then it is the duty of the employes in charge of cars to keep a lookout.

8. *Same; Action for Injuries; Jury Question.*—It is a question for the jury to determine, in an action against the street railroad company for injury to a trespasser, whether the locality and the surrounding circumstances were such as to make it the duty of those in charge of the car to keep a lookout for persons on the track.

9. *Negligence; Contributory Negligence; Infants.*—A child sixteen months old cannot be guilty of contributory negligence.

10. *Street Railroads; Injury to Persons on Track; Avoidable Injury.*—Irrespective of whether it was the duty of the motorman to keep a lookout for persons on the track, if a motorman discovers the person of a trespasser on the track in time to avoid injury, the master is liable for his failure to use the means and appliances at his command to prevent the injury.

11. *Same; Instructions; Applicability to Evidence.*—Where the question of duty to keep a lookout is for the jury an instruction predicated upon facts making it the motorman's duty to keep a lookout for persons on the track is proper, although, in the absence of testimony showing such a state of facts, the instruction might not be proper.

12. *Same; Actions for Injuries; Jury Question.*—Whether the motorman discovered the plaintiff in time to prevent the accident and whether he promptly used the means at his command to prevent it is, under the evidence in this case, a question for the jury.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by Annie May Jones, by her next friend, against the Birmingham Railway, Light & Power Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

TILLMAN, GRUBB, BRADLEY & MORROW, for appellant. The plaintiff though an infant of seven years old could be a trespasser.—*H. A. & B. R. R. Co. v. Robbins,* 124 Ala. 133; *A. G. S. R. R. Co. v. Morer,* 116 Ala. 642. Her only right was that of an immediate crossing, unless the defendant track was embedded in and incorporated

with the street, so as to form a part of it.—*Glass v. M. & C. R. R. Co.,* 94 Ala. 581; *Montgomery v. A. G. S. R. R. Co.,* 97 Ala. 305. Therefore, the oral charges of the court and the refused charges requested by the defendant was error. This case is on all-fours with the case of *Nave v. A. G. S. R. R. Co.,* 96 Ala. 264, and distinguishable from the case of *Southern Ry. Co. v. Bush,* 122 Ala. 470.

JOHN W. TOMLINSON, for appellee. Contributory negligence of the infant or of the parent is not available as a defense to an action for personal injury inflicted upon a child.—*A. G. S. R. R. Co. v. Burgess,* 116 Ala. 515; *Brawley's Case,* 83 Ala. 271; *Hanlon's Case,* 53 Ala. 70; *Crenshaw's Case,* 65 Ala. 566. In connection with the facts in this case, the court's attention is especially called to the case of *Bir. R. & E. Co. v. City Stables Co.,* 119 Ala. 620. "While running a car along a public street, a street railroad company's servants in charge thereof are 'under the duty to keep a diligent lookout for persons using the street, including the space occupied by the railroad track, and if a collision would not have occurred but for the negligent failure of defendant's servants to keep such lookout,' defendant is liable.—*Birmingham Raiyway, Light & Power Co. v. Brantley,* 141 Ala., p 619; *Birmingham Railway & Electric Co. v. City Stable Co.,* 119 Ala. 621; Nellis on Street R. R. Accident Law, pp. 247 and 331. It is the duty of a street railway company to 'so construct and repair and maintain the road bed, tracks and appliances that the usefulness of the highway by the general public shall be impaired in the smallest possible degree.' "—Nellis on Street R. R. Accident Law, Sec. 3, p. 221.

DENSON, J.—Third avenue, sometimes called "Georgia Avenue," is a public street in the city of Woodlawn; its course being east and west. Along this avenue the defendant has constructed and operates a street railway by permission of the municipality. The width of the avenue does not appear from the evidence; but it does appear the defendant's roadbed and track are located on the south side of it, the track being only about 10 feet from the property line on that side. The ties are laid on the surface of the earth, and the rails are laid on them. In other words, the railway is not so constructed as to become a part of the avenue, suitable for being traveled along or over with vehicles; but the evidence tends to show that pedestrians frequently pass along it. The travel in vehicles is confined to that part of the street which lies north of the railway. Sixty-Fifth and Sixty-Sixth streets, two other public thoroughfares in Woodlawn, intersect Third avenue, and consequently defendant's railway. At the Sixty-Fifth street crossing the defendant's cars make regular stops to take on or put off passengers, but do not make such stops at the Sixty-Sixth street crossing, which is east of Sixty-Fifth, and nearer to Gate City. The injury complained of in this case was inflicted on the plaintiff, an infant only 16 months old, while she was sitting on the end of a cross tie, or between the ends of two cross-ties, on the defendant's railway at a point between the two crossings mentioned, by one of defendant's electric cars going east, at about 2 o'clock in the afternoon of a bright day. The fender of the car struck the child on her head, causing a very serious injury. The accident occurred about 50 yards or steps east from the Sixty-Fifth street crossing, and the evidence tends to show that it was immediately in front of the dwelling of the parents of the plaintiff, which was located at the corner of Third ave-

nue and Sixty-sixth street and on the north side of the avenue. Plaintiff's mother had dressed her in a white garment and put her in the charge of an older child, on the veranda, and had gone into the house to attend to domestic duties. The older child, it seems, either left the baby or did not control her, and she crawled (she could not walk), out into the avenue and onto the track, and was in the position above indicated when she was struck by the passing car. The track is straight from Sixty-Fifth street to and even beyond the point where the accident occurred, and there were no obstructions to prevent a motorman, occupying the proper place on the car, while operating the car, from seeing an obstruction at that point from Sixty-Fifth street; and the evidence warrants the conclusion that, if the motorman had been maintaining a lookout ahead, he would have discovered the plaintiff in time to prevent the injury. The evidence tended to show that the motorman was on the front platform of the car, but did not positively show what he was doing before the accident occurred. However, witness Lankston testified that he (witness) was sitting on the rear seat of the car (on the side of the track on which the child was struck), looking out of the window at his left; that he saw an object on the track about 25 or 30 feet ahead of the car, but did not realize it was a child until the car was something like 10 or 15 feet from it, and at that time the "current was thrown on to stop the car" (he felt it) ; that the child was sitting with her face towards the car, and the rear end of the car was 6 or 8 feet beyond the point where the child was struck when the car stopped. Witness J. H. Woods testified that he was sitting on the second seat from the front, on the left side of the car (the side of the track the child was on when injured), and saw the child when the car

was 25 or 30 feet from her; that after he saw the child he could not tell the exact moment the brakes were applied, but that "it looked like" they stopped the car as soon as they could get it under control; that when he first saw the child in front of the car he did not immediately feel the brakes being put on, but that "some time elapsed" before that was done; that the car was not going very fast, on account of the fact that it had stopped at Sixty-Fifth street, fifty yards from the place of the accident. He testified, further, that "everything was excited—that he himself was excited, and that he could not say how long it was from the moment he saw the child until the brakes were applied, but that it was some little interval." The evidence also affords an inference that the car could have been suddenly stopped. The defendant offered no evidence in respect to the accident— gave no explanation of it whatever. From a judgment in favor of the plaintiff for $2,400, the defendant took this appeal.

There are many grounds in the assignment of errors, but they all converge at two points; the main question here presented for determination being whether or not the motorman owed plaintiff the duty, under the circumstances, to keep a lookout ahead for her. The court, in its oral charge, among other things, instructed the jury as follows: "If the jury should find from the evidence that at and before the time of the accident the defendant's motorman was not keeping a proper and diligent lookout, and if the jury find that the accident occurred within the limits of an incorporated town, the motorman would be guilty of negligence; and if the jury further find from the evidence that such negligence was the proximate cause of the injuries alleged to have been inflicted on the plaintiff then the plaintiff would be entitled to recover." The defendant reserved an exception

to this charge, and here challenges its correctness. The argument of appellant's counsel against the charge proceeds upon the theory that the plaintiff was a trespasser on the defendant's track at the time the injury occurred, and that, notwithstanding the evidence affords a just inference that the motorman, had he been keeping a lookout ahead, would have discovered plaintiff in time to avoid injuring her, yet on account of plaintiff's being a trespasser he owed her no such duty. As a general proposition it must be conceded that a railroad company owes to a trespasser no duty to keep a lookout for him. It must also be conceded that this doctrine, according to our own decisions and to the weight of authority elsewhere, applies with equal force to adults and infants, except in cases where infants are enticed upon the track. —*N., C. & St. L. Ry. v. Harris,* 142 Ala. 249, 37 South. 794, 110 Am. St. Rp. 29; *Chambers' Case,* 143 Ala. 255, 39 South. 170; *Highland, etc., Co. v. Robbins,* 124 Ala. 113, 27 South. 422, 8 2Am. St. Rep. 153, and cases there referred to; *Moorer's Case,* 116 Ala. 642, 22 South. 900; *Jefferson's Case,* 116 Ala. 294, 22 South. 546, 38 L. R. A. 458, 67 Am. St. Rep. 116; *Bush's Case,* 122 Ala. 470, 26 South. 168; *L. S., etc. R. Co. v. Clark,* 41 Ill. App. 343; *Morrisey's Case,* 126 Mass. 377, 30 Am. Rep. 686; *Williams' Case,* 69 Miss. 631, 12 South. 957; *Crystal's Case,* 105 N. Y. 164, 11 N. E. 380; *Foley's Case,* 78 Hun, 248, 28 N. Y. Supp. 816; *Goodman's Case,* 116 Ky. 900, 77 S. W. 174, 63 L. R. A. 657; *Parish's Case,* 102 Ga. 285, 29 S. E. 715, 40 L. R. A. 364; *McMullen's Case,* 132 Pa. 107, 19 Atl. 27, 19 Am. St. Rep. 591; Woodruff's Case, (C. C.) 47 Fed. 689; 3 Elliott on Railroads, §§ 1255, 1257, 1259. It must be further conceded that, in the case of *Glass v. M. & C. R. R. Co.,* 94 Ala. 581, 10 South. 215, this court has said: "This doctrine applies as well to densely populated neighborhoods in the coun-

try, and the streets of a town or city, as to the solitudes of the plains or forests, with this exception: Where a railway is built in a street or public road, in such way as to be incorporated with and to become a part of the roadbed of the street or road, as where the ties and rails of the railway are imbedded in the street or road, so that, as nearly as practicable, the top of the rail is visible and at the same level as the surface of the roadway —a manner of construction illustrated in what are known as street railways—where, in other words, it is manifest that the railway is intended to be, and to be used as, a part of the street or road in which it is em bodied, the public has not only the right to cross it, but also the right to pass along and use it as any other part of the street or road, being careful to look for and avoid approaching trains or cars; and in view of this right in the public, operatives of trains and cars on such railway are under a duty to keep a lookout for persons exercising it.  But where the railway is not thus incorporated with the street or road, the public has no more right to use it than if it were not in a street or road at all."

It must further be conceded that the manner of construction of the track in the present case does not bring it within the exception stated in the Glass Case.  Further, the plaintiff was not walking along the track, nor attempting to cross it.  She was sitting or lying on it. The case of *South. & N. R. R. Co. v. Donovan,* 84 Ala. 141, 4 South. 142, was one in which an infant was injured by the railroad while he was walking across the track within the limits of the city of Birmingham, and the railroad insisted that it was under no duty to keep a lookout for him, because, as it contended, he was a trespasser.  The court held bad a plea setting up the facts, because it failed to aver that the employes of defendant kept a lookout; and in the opinion said: "We

cannot say it was not the duty of the persons who were managing the train, under the circumstances of this case, to keep a vigilant lookout even for trespassers, and that a failure to do so would not be negligence. The decisions of this court support the contrary conclusion, at least where the injury occurs in the streets of a city, town, or village. What the rule would be where a naked trespasser on the track is injured in the open county, or elsewhere, by the failure of a railroad engineer to keep a vigilant lookout, is an open question in this state, upon which we now express no opinion." It is distinctly held in the *Glass Case* that one who merely walks across a railroad is not a trespasser, but that one who walks along a railroad track not constructed so as to bring it within the exception therein stated is a trespasser, though the line is located in a town or city; and the court says of the *Donovan Case*: "And the principle declared in Donovan's Case must be confined to persons exercising the undoubted, but qualified, right to cross a railroad track.—*Glass' Case,* 94 Ala. 589, 10 South. 215. While the *Glass Case* has been to some extent qualified in *Nave's Case,* 96 Ala. 264, 11 South. 391, in respect to certain conditions, known to the railroad, which would make it the duty of the company to look out for persons liable to be on the track at certain points, it still stands as authority, except where such conditions are shown to exist, and has been reaffirmed in the later case of *Montgomery's Executors v. A. G. S. R. R. Co.,* 97 Ala. 305, 12 South. 170. So it is the settled doctrine of this court that, while a person may, for the purpose of merely crossing a railroad, do so without becoming a trespasser, yet if he lingers on it, or walks along it at a place where he is not entitled to walk, he is a trespasser, and the company owes him no duty to keep a lookout for him.—*Chewning's Case,* 93 Ala. 24,

9 South. 459; *Stringer's Case,* 99 Ala. 397, 13 South. 75; *Tennessee, etc., Co. v. Hansford,* 125 Ala. 349, 28 South. 45, 82 Am. St. Rep. 241.

The contention of the appellant in no wise conflicts with the further doctrine, which is settled by this court, that it is the common-law duty of a motorman, running a street car in a populous town or city, to keep a lookout for persons rightfully on the track and liable to be run over by the cars.—*Anniston, etc., Co. v. Elwell,* 144 Ala. 317, 42 South. 45; *Blanton's Case,* 84 Ala. 154, 4 South. 621; *Daniel's Case,* 122 Ala. 366, 25 South. 197. But, actionable negligence being a failure to discharge a legal duty to the person injured, if there is no duty there is no negligence. And even if the defendant owed the duty to keep a lookout for persons rightfully on the track, but owed none to the plaintiff because she was a trespasser, no action will lie, for the duty must be to the person injured.—*So. Ry. Co. v. Williams,* 143 Ala. 212, 38 South. 1013; *O'Leary v. Brooks Elevator Co.,* 7 N. D. 554, 75 N. W. 919, 41 L. R. A. 677. On the facts of the case and the principles of law adverted to, we cannot escape the conclusion that the plaintiff was a trespasser on the road. While this is true, it will not do to lay down, as an invariable rule applicable to all cases, that a railroad company owes no duty to trespassers. Conduct which might, under one set of circumstances, show that all ordinary and reasonable care and diligence had been observed, might, under a different set of circumstances, be insufficient to show an observance of such care and diligence. Such rule could mean no more than this: Taking the locality where the car is running, and all the attendant circumstances, if those in control of the movement of the car have no reason to apprehend that there may likely be a human being on the track in front of it, they are under no duty to

one who in fact may be there, until they have actually discovered that he is there. But if, from the locality or attending circumstances known to the company, there is reason to apprehend that the track in front of the car may not be clear of human beings, then it would seem it is the duty of the employes of the company to keep a lookout ahead of the car. This, it seems to us, is a safe and conservative judicial principle—one which will conserve human life and at the same time place no burden on the company. It is also in keeping with the modification of the *Glass Case* as made in *Nave's Case,* 96 Ala. 264, 11 South. 391, which has been several times followed. *Haley's Case,* 113 Ala. 640, 21 South. 357; *Highland, etc., Co. v. Robbins,* 124 Ala. 113, 118, 27 South. 422, 82 Am. St. Rep. 153.

Are there any tendencies in the evidence in the case in judgment which may serve to bring it within the rule above enunciated? We think there are—not conclusive, it is true, but sufficiently so to make it a jury question, albeit from what appears in the record it does not seem that the cause was tried with respect to this principle. The evidence tends to show that the neighborhood was thickly settled, that pedestrians frequently passed along the track, and that children frequently played in the street at that point, and sometimes on that track. This, if known to the company, we feel warranted in saying, makes it a question for determination by the jury as to whether or not a reasonably prudent person, engaged in running an electric car along the street at that point, would apprehend that the track there might not be clear of human beings, especially of children; and if the jury should find that he would be so apprehensive, then as a matter of law it would be negligence on his part not to keep a lookout at that point, and if this negligence proximately contributed to plaintiff's injury the jury

would be warranted in returning a verdict for the plaintiff. Of course, what has been said must be understood as having been said without regard to the doctrine of contributory negligence; this doctrine, on account of the tender age of the plaintiff, having no foundation in the case.—*Brawley's Case,* 83 Ala. 371, 3 South. 555, 3 Am. St. Rep. 751. But it does not follow that the oral charge is free from error. On the contrary, we must for obvious reasons hold it erroneous. The effect of the charge is that, although the plaintiff was a trespasser, the defendant owed her the duty to keep a lookout ahead merely because the car was being run on a street within the corporate limits of a city. We have seen that such is not the law, and the giving of the charge must work a reversal of the cause.—*Carrington's Case,* 88 Ala. 472, 476, 6 South. 910; *Highland, etc., R. Co. v. Robbins,* 124 Ala. 113, 27 South. 422.

The other point in the case may also be discussed in connection with a part of the oral charge of the court which is presented for review. The court instructed the jury: "If the jury find from the evidence that the motorman discovered the child on the track, and with a knowledge of its danger negligently failed to use all the appliances at command to avert any injury to the plaintiff, and if said injury proximately resulted therefrom, there may be a recovery by the plaintiff on that ground." Whether the motorman was under any duty to keep a lookout for the plaintiff or not, if he discovered plaintiff's peril in time to prevent injuring her, and he negligently failed to use the means or appliances at his command to prevent the injury, and the injury resulted from such failure, by all the authorities liability for the injury would be fixed on the defendant.—*C. of G. R. Co. v. Lamb,* 124 Ala. 172, 26 South. 969; *C. of G. R. Co. v. Foshee,* 125 Ala. 199, 27 South. 1006; *Birming-*

*ham, etc., Co. v. Brantley,* 141 Ala. 614, 37 South. 698. We do not understand that appellant's counsel challenge the principle of law embodied in the instruction, nor, indeed, the form in which it is stated (the charge should have hypothesized discovery of peril in time to avert it); but their contention is "predicated on the principle that the motorman was under no duty to keep a lookout for plaintiff, and if so, no presumption existed that he saw the plaintiff in time to have avoided injuring her, from the fact that by keeping a diligent lookout he could have done so;" that "this presumption accompanies only the duty to keep a lookout, or evidence that the motorman was looking ahead"; and that in the instant case "there was no evidence that the motorman was looking ahead." In respect to this contetntion, in the light of the discussion which has preceded, we remark that the principle of law invoked by the charge becomes material only in the event the jury should find that the conditions at the point where the injury occurred were not such as made it the duty of the motorman to keep a lookout for the plaintiff, because if the duty existed, and there was a failure in this respect, the liability of the defendant would be fixed, irrespective of the principle invoked by the charge under consideration. If, however, the jury should find that the conditions were not such as made it the duty of the motorman to keep the lookout, then according to our former adjudication there must, to render the charge appropriate, be some evidence tending to show the motorman was looking ahead. In *Nave's Case,* 96 Ala. 264, 11 South. 391, the company owed the person injured no duty to look out for him, and the evidence did not show the engineer was looking ahead along the track, and it was decided "that, inasmuch as it was not the duty of the engineer to keep a lookout for a person on the track, the fact that

he could have seen him if he had looked did not authorize the inference that he did look and see him." And in *Southern Railway Co. v. Bush,* 122 Ala. 470, 487, 26 South. 168, 173, in respect to this question, the court, speaking through Tyson, J., said: "Certainly the facts that the road was straight for a long distance, the view of the track unobstructed, and the engineer was in his seat looking ahead along the track, and there was nothing to prevent him from seeing a person on the track a few hundred feet ahead, are relevant and admissible for the purpose of proving that he did see such person, and may properly be submitted to the jury on this issue; and, while no presumption arises from these facts that the engineer did see the person on the track, yet this may be inferred from these facts by the jury, whose province alone it is to decide the weight to be givn to facts legally in evidence and their effect on an issue which they are admitted to prove." And in *Alabama, etc., R. R. Co. v. Moorer,* 116 Ala. 642, 646, 22 South. 900, 901, a case for the negligent killing of a boy eight years old, the court said: "The plaintiff examined several witnesses, some of whom saw the boy when he was run on by the defendant's engine. They saw him, however, only a few moments before he was overtaken. He was running down the track, and threw his head around to see the approaching train. None of them knew or could testify as to when the engineer saw the boy. They did testify to facts tending to show when he might have seen him— evidence competent and important to be considered under the counts charging simple negligence, if the other evidence was conflicting as to whether he exercised due diligence, after the discovery of the boy's peril, to prevent the injury."

Under the evidence diclosed by the record, whether the motorman discovered the plaintiff in time to pre-

vent her injury by the prompt use of means at his command, and, if he did so discover her, whether he promptly used such means, are questions for determination by the jury under proper instructions from the court. Therefore the charge is not open to the criticism made by the appellant. What has been said will furnish a sufficient guide for the court on another trial, without discussing the various charges in detail.

For the error pointed out, the judgment appealed from will be reversed, and the cause remanded.

Reversed and remanded.

TYSON, C. J., and DOWDELL and SIMPSON, JJ., concur.