# Glass *v.* Memphis & Charleston Railroad Co.

*Action for Damages against Railroad Company, by Administrator of Person Killed.*

1. *Railroad track in public street.*—In an action against a railroad company for damages on account of personal injuries received at a trestle across a ravine in a public street, it is immaterial whether the track was rightfully laid in the street or not, since the right to lay it there might have been, and the presumption is that it was, lawfully acquired.

2. *Custom as to walking on railroad track.*—A person who walks on a railroad track is a trespasser, and the fact that persons in the neighborhood are in the habit of walking on it, without objection on the part of the railroad authorities, does not change or affect the character of the act as a trespass.

3. *Habits of person injured, as evidence on question of negligence.*—In an action for damages on account of personal injuries received by a person while walking on a railroad trestle, his habits as to walking on or crossing railroad tracks, whether careful or careless, are not admissible as evidence.

4. *Evidence as to condition and use of street.*—Plaintiff's intestate having been killed while walking along a railroad trestle across a ravine in what was once the north end of a public street in the town, but which had become impassable, and its use as a street discon-

[Glass v. Memphis & Charleston Railroad Co.]

tinued, the fact that the south end was still open and in use as a street is irrelevant and inadmissible as evidence.

5. *Crossing railroad track as trespass or negligence.*—Crossing a railroad track, whether in town or country, is not a trespass; nor is the person crossing guilty of negligence, if he uses due diligence in looking out for approaching trains.

6. *Walking on railroad track as trespass.*—A person walking along a railroad track, whether in town or country, and without regard to its location or the surrounding circumstances, is a trespasser, for whom the train-men are not required to keep a lookout, and towards whom they owe only the duty of exercising reasonable care to avoid injury after his danger is actually discovered; except where, as in the case of street railways, the railroad is so laid and imbedded in the street as to become a part of it. (Overruling *S. & N. Ala. Railroad Co. v. Donovan*, 84 Ala. 141, as to duty of train-men to keep stricter lookout in districts thickly populated.)

7. *Same*—In an action for damages on account of personal injuries received by such trespasser, it is immaterial whether or not he used proper diligence to discover approaching trains, before he entered on the railroad track, or while he continued to walk along it; and it is equally immaterial whether the men in charge of the train might, by the exercise of due diligence, have discovered him on the track in time to avoid the injury : the only inquiry is, whether they exercised due diligence after they discovered him.

8. *Error without injury in charge as to damages.*—When the record shows that the jury returned a verdict for plaintiff for pecuniary damages, he can not complain of a charge instructing them that there is no evidence before them of any pecuniary damages.

9. *General charge on evidence.*—A general charge on the evidence is properly refused, not only when there is a conflict in the evidence on a material point, but when it would authorize the jury to draw an inference adverse to the party asking the charge.

APPEAL from the City Court of Decatur.

Tried before the Hon. WM. H. SIMPSON.

This action was brought by Samuel Glass, as the administrator of the estate of his deceased mother, Mrs. Martha Glass, to recover damages for the alleged wrongful and negligent acts of the persons in the employment of the defendant corporation which caused her death; and was commenced on the 22d August, 1889. The main defense was contributory negligence. The evidence showed that Mrs. Glass was run over and killed by one of the defendant's freight trains, while she was walking along a trestle which spanned a ravine in the city of Decatur, in what was laid off and known as Water street; that the defendant had constructed a spur-track along this street in 1886, running from its main track to some charcoal works about two miles distant; that the ravine was from ten to twenty feet deep, and the trestle from seventy to eighty feet long; that the trestle and railroad track were erected in 1886, near the intersection of Water street with Wells street; that the street was only about thirty feet wide, and most of it at that point was taken up by the railroad track; and that its use as a street for the passage of vehicles was discontinued

[Glass v. Memphis & Charleston Railroad Co.]

after the construction of the trestle and railroad. The evidence was conflicting as to the speed at which the train was moving, some of the plaintiff's witnesses fixing it at twenty miles per hour, while the train-men said it was only six or eight miles. The train consisted of seven or eight loaded cars, pushed forward by an engine in the rear; and it approached the trestle from behind Mrs. Glass. The train-men testified that she was near the middle of the trestle when they discovered her, and the train had almost reached the trestle; that they at once blew the whistle, and made every effort to attract her attention, and used all appliances to stop the train, and only succeeded in stopping it after it had struck her within ten feet of the end of the trestle. There were several exceptions by each party to rulings on evidence. The jury gave the plaintiff a verdict for $460, as "pecuniary damages."

The court gave an elaborate charge to the jury, partly written and partly oral, instructing them, among other things, (1) that the presumption was, in the absence of evidence to the contrary, that the railroad was rightfully laid in the street where the trestle crossed the ravine; (2) that the railroad company is entitled to the exclusive possession and use of its tracks, and persons who walk along or across them are trespassers; (3) that Mrs. Glass was guilty of negligence, if she failed to look and listen for approaching trains before she started on the trestle; (4) that the men in charge of a railroad train are required to keep a vigilant lookout for persons on the track, even though they are trespassers, and this duty is more imperative in cities and towns than in the country; and (5) that they might impose punitive damages, if they believed that the persons in charge of the train were guilty of gross negligence, or failed to use reasonable care to avoid accident after they discovered the danger of plaintiff's intestate. Exceptions were reserved to this charge by each party, as follows: "Plaintiff excepted to that part of said charge in regard to the railroad company not being a trespasser, and that the deceased was a trespasser; and the defendant excepted to that part of said charge in reference to what the jury might consider in assessing damages, especially punitive damages; also, as to the duty of the railroad to keep a lookout at points where the killing occurred."

The defendant requested the following charges in writing: (1.) "Even if the train could have been stopped before reaching the trestle, defendant would not be liable on the evidence in the case, if the train-men, after discovering Mrs. Glass on the trestle, made an effort in good faith, with the means at their command, to stop the train and prevent injury to her."

[Glass v. Memphis & Charleston Railroad Co.]

(2.) "Defendant did not owe plaintiff's mother any duty to discover her on the trestle in time to stop the train and prevent injury to her, if she could have seen the train coming by looking back when she went on the trestle, or while she was on it; and if the train-men in good faith tried to stop it and prevent injury to Mrs. Glass, after they discovered her danger, defendant would not be liable."

(3.) "There is no evidence before the jury of any pecuniary damages to plaintiff by reason of the injury to and death of his intestate; and if the jury find for the plaintiff, he would be entitled to nominal damages only, unless said intestate came to her death by the reckless, wanton, or intentional negligence of defendant's employés in charge of said train."

(4.) "The failure of defendant's train-men to look out for obstructions on the track, and to discover Mrs. Glass on the trestle in time to stop the train before reaching her, if the jury find from the evidence that there was such failure, would not, alone, authorize them to find that defendant was guilty of wanton, reckless, or intentional negligence."

(5.) "If the jury believe the evidence, they would not be entitled to find for the plaintiff, unless they find that the train-men, after they discovered Mrs. Glass on the trestle and the danger she was in, failed to make an effort in good faith to stop the train and prevent the injury."

(6.) "If the jury believe the evidence in the case, it establishes the fact that plaintiff's intestate went upon the trestle over which defendant's track runs, and that when she went on it, if she had looked back, she could have seen the train coming in time to get out of the way and avoid injury; and the failure of the train-men to discover her in time to stop the train is not such evidence of wanton, intentional or reckless injury as will authorize a recovery by plaintiff."

(7.) "On the undisputed evidence in the case, plaintiff's intestate was not lawfully on defendant's track at the place where she came to her death, and defendant owed her no duty except not to injure her wantonly, recklessly, or intentionally."

(8.) "If the jury believe from the evidence that plaintiff's intestate went upon the railroad track, and attempted to walk across the trestle, when defendant's train was approaching it, and that she could have seen the train coming if she had looked in the direction from which it was coming, or could have heard it if she had stopped and listened; then she was guilty of contributory negligence, if she went on the trestle without so looking and listening, and the verdict of the jury must be for the defendant, unless they find from the evidence that the

[Glass v. Memphis & Charleston Railroad Co.]

train-men, after they discovered that she was on the trestle and in danger of being struck by the train, did not in good faith try to stop the train by the use of the appliances at their command."

(9.) "If the jury believe from the evidence that plaintiff's intestate went on the trestle over which defendant's track ran, and that the train was then approaching the trestle; then it was the duty of said intestate to use her senses of hearing and seeing to discover the approaching train in time to avoid danger; and if she did not look and listen to discover said train, if it was then approaching said trestle, she was guilty of contributory negligence, and plaintiff can not recover, unless the failure of the train-men to stop the train, after they discovered Mrs. Glass on the trestle, amounted to intentional indifference to stop the train and prevent injury to her."

(10.) "If the jury believe the evidence, they must find for the defendant."

(11.) "The jury have no right in this case to accord to the plaintiff any vindictive or exemplary damages."

(12.) "There is no evidence before the jury of any pecuniary damages, and if they find for the plaintiff, they can assess only nominal damages."

Of these charges, the court gave the 1st, 2d, 3d, 4th, 5th, 6th, 7th, 8th, and 9th, and refused the others. The plaintiff excepted to each of the charges given, and the defendant to the refusal of the others. The plaintiff appeals, and assigns as error each of the rulings to which he reserved exceptions; and there are cross-assignments of error by the defendant.

WERT, SPEAKE & CALLAHAN, and E. W. GODBEY, for appellant, argued the principal assignments of error, and cited *Geo. Pac. Railroad Co. v. Blanton*, 84 Ala. 157; *M. & C. Railroad Co. v. Womack*, 84 Ala. 149; *S. & N. Ala. Railroad Co. v. Donovan*, 84 Ala. 146; *Frazer v. S. & N. Ala. Railroad Co.*, 81 Ala. 200; *Geo. Pac. Railroad v. O'Shields*, 90 Ala. 29; *Cassida v. Oregon R. & N. Co.*, 13 Pac. Reporter, 438; *S. & N. Ala. Railroad Co. v. Shearer*, 58 Ala. 672; 26 Amer. Rep. 396.

HUMES & SHEFFEY, *contra*, cited *M. & C. R. R. Co. v. Womack*, 84 Ala. 149; *Mason v. N. P. Railway Co.*, 6 Am. & Eng. R. R. Cases, 1; *Tanner v. L. & N. R. R. Co.*, 60 Ala. 638; *Frazer v. L. & N. R. R. Co.*, 81 Ala. 199; *Blanchard v. Lake Shore Railway Co.*, 9 Am. St. Rep. 630; *Kelly v. Mich. Cen. Railway Co.*, 8 Am. St. Rep. 876; *Durbin v. Oregon R. R.*, 11 Am. St. Rep. 778; *Greenwood v. P., W. &*

*B. R. R.*, 10 Am. St. Rep. 616; 2 Shearman & Redfield on Negligence, §§ 476, 748; *L. & N. R. R. Co. v. Orr*, 91 Ala. 548; *L. & N. R. R. Co. v. Crawford*, 89 Ala. 240–246; *Gothard v. Ala. G. S. Railway*, 67 Ala. 114; *A. G. S. R. R. v. Chapman*, 80 Ala. 620; 3 Lawson's Rights & Remedies, 2097; *Bentley v. G. P. Railway Co.*, 86 Ala. 484; *Carrington v. L. & N. R. R. Co.*, 88 Ala. 475, 477; *E. T., V. & G. R. R. Co. v. Bayliss*, 77 Ala. 429; *Donovan v. S. & N. R. R. Co.*, 79 Ala. 429; *Patterson v. S. & N. R. R. Co.*, 89 Ala. 318; *W. U. Tel. Co. v. Way*, 83 Ala. 542.

McCLELLAN, J.—1. Whether the spur-track of the Memphis & Charleston Railroad Company was rightfully in what was known as Water street, is not a material inquiry in this case. Railway companies may, and frequently do, acquire the right to lay their tracks in the streets of towns and cities, and, unless the question is raised in a direct proceeding to oust them of the use for this purpose of the streets, the presumption is, as declared by the City Court, that they are in rightful occupancy thereof.

2. "The mere fact that persons living in the neighborhood of a railroad track have become accustomed to use it to walk upon, without any objection on the part of the railroad company, does not in any manner alter or change the duty of the railroad company to such persons. They are simply trespassers." And evidence of such custom is irrelevant and inadmissible.—*Central K. R. of Ga. v. Brinson*, 70 Ga. 207; s. c., 19 Amer. & Eng. R. R. Cases, 42, and notes; *Hoffe v. C. M. & St. P. Railway Co.*, 61 Wis. 357; s. c., 19 Amer. & Eng. R. R. Cas. 14, and notes; *M. & C. R. R. Co. v. Womack*, 84 Ala. 149; *C. & W. Railway Co. v. Meadows*, present term; *Mason v. M. P. Railway Co.*, 6 Amer. & Eng. R. R. Cases, 1.

3. Evidence of the habits of the person injured, in respect of trains, whether those of a prudent and careful person or the reverse, is never admissible in actions sounding in damages for personal injuries.—*So. R. R. Co. v. Robbins*, 41 Am. & Eng. R. R. Cases, 316; *Chase v. Maine Central R. R. Co.*, 19 Amer. & Eng. R. R. Cases, 356; *B. & O. R. R. Co. v. Colvin*, 32 Amer. & Eng. R. R. Cases, 160; *C. R. I. & P. R. R. Co. v. Clark*, 15 Amer. & Eng. R. R. Cases, 261.

4. The fact that the south end of Wells street, the north end of which as originally laid out and used lay along where the ravine now is, was still open and in use as a street, was not relevant to any issue in this case. It is uncontroverted that, at the time plaintiff's intestate was killed by being knocked from the railway trestle which spanned this ravine,

there was no street either in or crossing the ravine, and no mode of crossing it except upon the timbers of the trestle, and no way open by which vehicles or pedestrains could pass down what had once been but had long since ceased to be the northern part of Wells street. What influence the intestate's right to be on the south end of that street could have upon her or the company's rights and duties with respect to this trestle, is not conceivable.

5. It is not negligence in itself for one to *cross over* a railroad track wherever he may have occasion to do so. Before making the attempt, however, he must know that no train, engine or car is approaching in such proximity as to render the undertaking dangerous. If he fail to use his senses to this end—if, ordinarily, he omit to stop and look and listen for trains before going upon the track for the purpose of passing over it—his act in so doing is a negligent one *per se;* and if injury result to one thus on the track in consequence of not having taken this precaution, enjoined upon him by the commonest dictate of prudence and care, it is well settled in our jurisprudence that he can not recover for the mere negligence of the railway company.—*L. & N. R. R. Co. v. Webb,* 90 Ala. 185; *Leak v. Ga. Pac. Railway Co., Ib.* 161. And it follows, of course, that one having this right, with this care and caution, to cross the track of a railway whenever and wherever he has occasion to be on the other side of it, who takes this precaution, goes on the track for the purpose of crossing it with all the assurance his senses properly exercised can give him that it is safe to do so, and yet, from some cause against which he could not guard, is injured, he may recover. For the law does not contemplate that railroads, road-beds and tracks shall impede travellers, whether along highways or across country, any more than their physical conformation may of necessity involve; and while the traveller may be negligent in attempting to cross without proper circumspection, he is never a trespasser, because he is never without this qualified right to pass over.

6. But precisely the reverse of all this is true with respect to one, whether in town or country, and whether the track be upon an embankment, on a level, or in a cut, or through a tunnel, or over a trestle, who gets on a railroad for the purpose of passing, not across it, but along its course, and does proceed along its course, using it as a road. Such one is essentially and at all times a trespasser, if he be not there by the sanction of the company; and he is as much a trespasser whether he stop and look and listen before going upon the track or not; nor is his attitude in this respect in any degree relieved by

the utmost diligence and care to avoid injury while proceeding on his way. This may secure his safety, but it renders him none the less a trespasser. He, unlike one who merely crosses the track, and to whom it is only an impediment to progress which he has a right to overcome prudently and carefully, uses that of which the company is entitled to the exclusive use; and his act is in the nature of a conversion, a wrongful, misappropriation, of another's property to his own purposes. In all reason, and by every analogy which the law affords, he must act upon his own peril; the company owes him no duty except that which every man owes to every other man whether a trespasser or not—to do no act, nor omit anything, after his presence and peril become known, the doing or omission of which would tend to inflict injury upon him. There are cases,. and among them that of *S. & N. Ala. R. R. Co. v. Donovan*, 84 Ala. 141, which appear to hold that those operating a railroad in a town or city through a thickly populated district, where there is occasion for people to pass along the track, and a usage to that effect, owe the duty of keeping a vigilant lookout for such persons, at such places. This doctrine does not, in our opinion, consist with that declared in the succeeding cases of *M. & C. R. R. Co. v. Womack*, 84 Ala. 149, and *Ensley Railway Co. v. Chewning*, 93 Ala. 24; nor with the general doctrine, now thoroughly established in this court, that one who is injured in consequence of being negligently on a railroad track can not recover unless the railroad employés are guilty of such gross negligence or recklessness as amounts to wantonness, or an intention to inflict the injury, and that this wantonness and intention to do wrong can never be imputed to them, unless they actually *know*, not merely ought to know, the perilous position of the person on the track, and with such knowledge fail to resort to every reasonable effort to avert disastrous consequences. And this doctrine applies as well to densely populated neighborhoods in the country, and to the streets of a town or city, as to the solitudes of the plains or forests; with this exception: where a railway is built in a street or public road, in such way as to be incorporated with and to become a part of the road-bed of the street or road, as where the ties and rails of the railway are imbedded in the street or road so that as nearly as practicable the top of the rails alone is visible, and at the same level as the surface of the roadway—a manner of construction illustrated in what are known as street railways—where, in other words, it is manifest that the railway is intended to be and to be used as a part of the street or road in which it is embodied, the public has not only the right to cross it, but also the right to pass

[Glass v. Memphis & Charleston Railroad Co.]

along and use it as any other part of the street or road, being careful to look for and avoid approaching trains or cars; and in view of this right in the public, operatives of trains and cars on such railway are under a duty to keep a lookout for persons exercising it. But where the railway is not thus incorporated with the street or road, the public has no more right to use it than if it were not in a street or road at all. It is clear on the undisputed evidence in this case that the track of the defendant company at the point of the casualty counted on is not within this exception.—*Ga. Pac. Railway Co. v. Lee*, 92 Ala. 262; *R. & D. R. R. Co. v. Vance*, 93 Ala. 144; *L. & N. R. R. Co. v. Trammell*, 93 Ala. 350; *C. R. & B. Co. of Ga. v. Vaughan*, 93 Ala. 209.

That these adjudications establish that there can be no recovery in such cases for the mere negligent failure to see the trespasser in time to avoid injuring him, can not be doubted. A duty for a violation of which no redress is afforded is an anomaly; it can not in any legal sense be said to be a duty at all. Hence it must be that train-men are under no duty to keep a lookout for such persons, since confessedly their failure to do so involves no liability upon their employers, and warrants no redress to the injured persons in consequence of such failure. And the principle declared in *Donovan's Case* must be confined to persons exercising the undoubted but qualified right to *cross* a railroad track. For such persons a lookout must be maintained, since they are in no sense trespassers, having always the right to pass over the track, and doing so, when due care is observed by them, not at their own peril, but upon the implication that the company will, in recognition of their right, keep a lookout for them, and conserve their safety. Persons travelling on the track, having under no circumstances a right to do so, can never assume that railroad employés will be on the alert to discover them in their wrong-doing. The latter are authorized to presume that the road-bed will not be thus wrongfully intruded upon and used, and are justified in acting upon this presumption. It is only when the presumption of the absence of trespassers is displaced by the knowledge of their presence, that the duty to observe all reasonable care and prudence to avoid injuring them arises and is upon train-men.

7. In the case at bar, the person killed did not intend and was not attempting to simply *cross* the track, but she was upon and proceeding along the track over a high trestle of considerable length. To this effect the evidence is free from conflict. Hence, whether she stopped and looked and listened before entering upon the track for approaching trains, whether,

had she done so, she would have been apprised of the approach of the train which killed her, and whether she was attentive and diligent to discover the approach of a train while proceeding along the track, are each and all wholly immaterial inquiries. No possible solution of any one or all of them could have affected her *status* with respect to the train, or the duties of the train-men with respect to her. Had she seen or heard the train approaching, and gone upon the trestle, from which there was no escape short of outracing the train to the further end of it, in front of the moving cars, this would, according to the intimation in *Georgia Pacific Railway Company v. Lee*, *supra*, have been such recklessness on her part as would have defeated recovery by her administrator, even had the train-men themselves been guilty of gross negligence amounting to wantonness; but it is not pretended that she either saw or heard the train before going on the trestle, and it is to be doubted whether she ever became aware of its proximity till stricken by it. But she was wrongfully at the place where she was killed. She was a naked trespasser, wholly regardless of the precautions she may or may not have taken before going on the track, or while proceeding along it. Her negligence and wrong in being there would, as a matter of law, and to be so declared by the court, be a complete defense in this case, so far as defendant's liability is attempted to be rested on the mere negligence of its employès; and on the other hand, such negligence would not preclude a recovery, if the defendant's employès were guilty of that wantonness or recklessness which is imputable from wrongful acts or omissions on their part after they discovered her peril; and this though she had been wholly lacking in care and circumspection at the moment of going on the track, and while proceeding along it. So that it is manifest that the ruling and charges of the trial court in respect of her supposed lack of diligence and prudence in going on the track without stopping and looking and listening for a train, and in proceeding along the track without keeping a vigilant outlook for its approach, are mere abstractions in the case, which, whether correct in themselves or not, can exert no influence upon the facts of either appeal. Of this character are charges 2, 6, 8 and 9, given at the instance of the defendant, and charge 4 refused to plaintiff. In some of the charges referred to, given for defendant, and in those numbered 1, 4, 5, 7 of defendant's series, as also in the court's general charge, the propositions, that the railroad company was not a trespasser in the street, that the intestate was a trespasser on the company's track, that the defendant owed her no duty but that of resorting to all reasonable effort to

[Glass v. Memphis & Charleston Railroad Co.]

conserve her safety after her peril was discovered, that her presence on the trestle was negligence *per se*, and that the plaintiff was not entitled to recover unless the jury found that the train-men, after becoming aware of the intestate's position and danger, failed to exert themselves to avert the disaster, &c., are clearly stated in accordance with the foregoing opinion; and the assignments of error by the original appellant, which proceed on a different theory as to the principles of law obtaining in the premises, are untenable.

8. If it be supposed that charge No. 3, given for defendant, is faulty in that it declared "there is no evidence before the jury of any pecuniary damages to the plaintiff by reason of the death of his intestate," the infirmity will not avail on this appeal; because, the jury having expressly found that pecuniary damages were inflicted upon the plaintiff, and returned a verdict therefor, this declaration, if erroneous, would not have involved injury to the appellant in chief.—*Donovan v. L. & N. R. R. Co.*, 79 Ala. 429; *Carrington v. L. & N. R. R. Co.*, 88 Ala. 472.

9. The cross-appellant, the railroad company, has withdrawn all the assignments of error originally made by it, except that one which is addressed to the refusal of the trial court to instruct the jury to return a verdict for defendant if they believed the evidence. This charge should never be given when the evidence on a material point is conflicting, or when, whether conflicting strictly speaking or not, it affords a legitimate inference adverse to the party requesting the instruction. The pivotal inquiry in this case was, whether defendant's employés did all in their power to avert the disaster after becoming aware of the intestate's presence and peril. The affirmative charge was asked by the defendant on the theory, that they fully acquitted themselves in this regard; but we are not prepared to say that the jury were not authorized from all the circumstances in evidence to infer the contrary, and hence our conclusion that the charge was properly refused.

The foregoing considerations determine all the questions reserved on both appeals against the respective appellants; and the judgment on each appeal is affirmed.

WALKER, J., not sitting.