54 So.2d 601

## WATTS v. ATLANTIC COAST LINE R. CO.

### 7 Div. 108.

Supreme Court of Alabama.
Oct. 18, 1951.

Byron D. Boyett and J. J. Cockrell, Talladega, for appellant.

Stringer & Montgomery, Talladega, for appellee.

STAKELY, Justice.

James Thomas Watts (appellant) brought this suit against the Atlantic Coast Line Railroad Company, a corporation, and R. A. Rowell for alleged personal injuries. The complaint consisted of three counts, count 1 based on simple negligence, count 2 on willful or wanton misconduct and count 3 on subsequent negligence. The demurrer of R. A. Rowell was sustained to all counts of the complaint and since there was no effort to amend as to him, the suit was abandoned so far as he is concerned. Demurrer of the Atlantic Coast Line Railroad Company was sustained to count 1. The defendant company then pleaded in short by consent to counts 2 and 3 and the case proceeded to trial on the issues thereby made with the result that at the conclusion of the evidence the court. gave the general affirmative charge for the defendant company, with resulting verdict and judgment for the defendant.

Reversal is sought on the grounds (1) the court was in error in sustaining the demurrer to count 1 of the complaint, (2) the court was in error in giving the affirmative charge in favor of the Atlantic Coast Line Railroad Company and (3) the court was in error in its ruling as to a certain feature of the evidence.

The plaintiff claims to have been injured by a train operated by the Atlantic Coast Line Railroad Company on September 6, 1949, at about 7 o'clock p. m. The testimony of a number of witnesses introduced by the plaintiff tended to show that for several years prior to the time when plaintiff sustained his injuries people in large numbers had walked along a path on the right of way of the railroad company adjoining the railroad track at a point where plaintiff sustained his injury. . It was shown that at and prior to the time plaintiff sustained his injuries there was a "No Trespassing" sign erected and maintained by the Atlantic Coast Line Railroad Company. This sign was immediately north of the main track and defendant was walking along a path which was immediately south · of a side track. This side track was south of the main track. The place where the plaintiff was injured was between Spring and West Streets in the City of Talladega, Alabama. He was injured at a point between the two streets in the vicinity of the switchstand, where the south track came into the northern or main track. Spring and West Streets run north and south and the tracks of the railroad company with a slight curve run east and west. There was no evidence in the case as to the manner in which the plaintiff sustained his injuries except the testimony of the plaintiff in this regard which was in substance as follows.

As the plaintiff approached the defendant's track at the Spring Street crossing he looked east and saw the train by which he was injured at the depot in Talladega, Alabama. As he turned down the track the train pulled out from the depot and according to the plaintiff he figured that he could · beat it to West Street. The train was then at the East Street crossing and the next crossing as the train proceeded westerly is the Court Street crossing. The next crossing is Spring Street and then the West Street crossing. At the Spring Street crossing the plaintiff turned westerly and followed a path which lies immediately

south of the sidetrack, the main track being immediately north of the sidetrack. When he saw the train standing at the depot the headlights were on and the headlights were continuously on until he received his injuries. He proceeded westerly, which was the same direction in which the train was proceeding. He walked in the path south of the sidetrack. The sidetrack at a point between Spring and West Streets intersects or runs into the main track. He received his injuries at about the point where the switchstand is located. When he was about 20 to 30 yards from the switchstand and while he was walking along the path he looked back and saw the train which was then crossing Spring Street. When he was injured the engine had already passed him. He was hit by the baggage car or the first passenger car. While he was walking along the path he threw out his hand, when he saw that he was too close to the train. He threw out his hand and pushed himself away from the train. His hand touched the side of the car and the next thing he knew he fell and the train ran over his hand. According to him the train was making a speed of about twenty miles per hour and he did not hear any signals just prior to the time the train reached Spring Street and between Spring Street and West Street before he was struck. According to him the bell was not ringing.

According to the plaintiff there was an obstruction in the pathway. As the train was approaching him from behind he observed the end of a loose rail sticking out on the walk on his left. He thought the rail was parallel to the path. He used this rail to walk by and figured he could be in the clear but the further he walked the closer he got to the track. When the train passed over the switchstand it began to rock. He saw he was too close to the train and thereupon he threw up his right hand to get out in the clear. His hand stuck to the train. He fell on his right side and his right hand fell up the track. His hand hit the track and the train ran over it and mashed off his fingers.

According to the plaintiff he had been familiar with that part of the road between Spring and West Streets about thirty years and had been traveling over the path himself for 30 years. He traveled it sometimes daily two or three times a day and according to his best judgment two hundred people more or less walked it daily going to and from their work.

The testimony of the engineer R. A. Rowell and of the fireman Dan Griffin was in substance as follows. The automatic bell was ringing continuously from the time the train left the depot until the train reached West Street which was a point further west than the point at which the plaintiff was injured. The brakeman flagged the Court Street crossing and the whistle was blown for the Court Street crossing, the Spring Street crossing and the West Street crossing. The whistle was blown four times for each crossing. The engineer was in the engineer's seat on the righthand side of the cab and the fireman was in the fireman's seat on the lefthand side of the cab from the time the train left the depot until it reached the West Street crossing. They were both constantly keeping a lookout along the track and in front of the train. Both testified that they did not see the plaintiff and did not know he was injured until the next day and did not stop the train after he was injured. They as well as the other members of the train crew who were K. J. Hearn, conductor, J. C. Hudson, the flagman, and James Hill, porter and brakeman, all testified that from the time the train left the depot until it reached West Street the train was traveling at a speed of about 6 to 8 miles per hour. The conductor, flagman and porter were at such positions on the train that they did not have any opportunity to see ahead of the train or to see on the side of the train on which plaintiff was injured. Their positions were such that they had no opportunity to see the plaintiff at or before the time he was injured.

S. C. Brand, the section foreman of the plaintiff, testified that the switchstand was 104½ feet east of West Street. The distance from Spring Street to West Street is 345 feet. At a point 6 feet east of the switchstand the path is 9 feet south of the nearest rail. Near Spring Street there is a

sign on the right of way reading "No trespassing Atlantic Coast Line Property".

According to R. A. Rowell the headlights were burning and he could see straight ahead a distance of 250 feet or a whole block. He had knowledge of the existence of the path there and could see anyone that was walking along the path. He had observed people along the track there at various times of the day and night and there was nothing to obstruct his view to keep him from seeing anyone there on the day of the accident. He did not see any loose or detached rail lying on the right of way but he could not say there was none there.

Dan Griffin, the fireman, testified that he had knowledge of the path. He had seen people walking along the path every time he passed most especially on Saturday nights and there was nothing to obstruct his vision. He did not see anybody walking along there on this particular occasion and that he had observed the switchstand in the immediate vicinity of where the plaintiff was injured.

Numerous witnesses were introduced by the plaintiff to show that people were continuously going up and down this well beaten path, and this had been customary for many years.

 I. There was no error in sustaining the demurrer to count 1. This count is based on simple negligence, yet the count fails to show that the plaintiff when injured was not a trespasser on the defendant's track or that defendant's servants in charge of the train became aware of his perilous position on the track and thereafter were guilty of actionable conduct. Southern Railway Co. v. Forrister, 158 Ala. 477, 48 So. 69; Gadsden & A. U. R. Co. v. Julian, 133 Ala. 371, 32 So. 135. When the reliance is on simple negligence the pleader should allege a relationship that would render the defendant liable for initial negligence. Kendrick v. Birmingham Southern R. Co., 254 Ala. 313, 48 So.2d 320; Louisville & N. R. Co. v. Sunday, 254 Ala. 299, 48 So.2d 216. The allegations in the count that the point where the plaintiff was injured was on the defendant's track in a thickly populated municipality where the public including a large number of people customarily and frequently walked along the track, does not supply the deficiency in the count. The fact that a large number of people are accustomed to walk along the track of the railroad without objection by the company does not make them any the less trespassers. Southern Railway Co. v. Forrister, supra; Louisville & N. R. R. Co. v. Mitchell, 134 Ala. 261, 32 So. 735; Alabama Great Southern Railway Co. v. Godfrey, 156 Ala. 202, 47 So. 185; Glass v. Memphis & Charleston R. R. Co., 94 Ala. 581, 10 So. 215.

 II. The court acted correctly in giving the affirmative charge as to counts 2 and 3 at the request of the defendant railroad. Evidence that persons living in the neighborhood or the public use the railroad way for longitudinal passage for their own convenience is admissible in connection with other evidence to show wanton or wilful injury on the part of the agents or servants of the railroad company in charge of the train. Southern Railway Co. v. Stewart, 179 Ala. 304, 60 So. 927; Illinois Central Railroad Co. v. Martin, 213 Ala. 617, 105 So. 805; Northern Alabama Ry. Co. v. Guttery, 189 Ala. 604, 66 So. 580; Clark v. Birmingham Electric Co., 236 Ala. 108, 181 So. 294. Notoriety and duration of the public use are important only as tending to charge the company's servants with knowledge of conditions in the absence of direct proof of their actual knowledge. Southern Ry. Co. v. Stewart, supra. But such evidence of the use of the right of way as a passageway does not raise any conflict in the evidence so as to prevent the giving of the affirmative charge for the defendant. Callaway v. Griffin, 245 Ala. 598, 18 So.2d 547. Plaintiff's right of recovery must be tested not by the duty owed to the general public under the evidence, but by the duty owed to plaintiff under the particular conditions shown by the evidence. Southern Railway Co. v. Stewart, supra; Callaway v. Griffin, supra.

 The testimony of the engineer and fireman was to the effect that they kept a constant lookout. However if it be assumed that they did not keep such a lookout and did not perform their duty in this regard, then such failure in the perform

358

ance of their duty had no causal connection with the injury suffered by the plaintiff. This is true for the reason that if a proper lookout had been kept, then according to the plaintiff's own testimony they would have seen plaintiff in a position of safety and there would have been no duty upon them to stop the train. Where a person is walking along a railroad right of way in a position of safety and there is nothing to indicate that he is not in the proper exercise of his senses and could not continue to perform the obvious duty of keeping his course and avoiding an approaching train, the operators of a train have a right to assume that the traveler will remain out of danger and no immediate action is then incumbent upon them. Callaway v. Eason, 248 Ala. 523, 28 So.2d 560; DeBardeleben v. Western Ry. of Alabama, 227 Ala. 553, 151 So. 56; Illinois Central Railroad Co. v. Martin, supra; Atlantic Coast Line Railroad Co. v. Flowers, 241 Ala. 446, 3 So.2d 21.

 The evidence of the plaintiff himself shows that he was at all times informed of the approach of the train. From the time that he left Spring Street and again when he looked back, he was informed of the approaching train. He of course knew that he was walking along a path by the side of the train and according to his own evidence, when he stuck out his hand he was struck by the baggage car or the first passenger coach of the train and not by the engine. It is obvious that any failure in duty on the part of the engineer or fireman to ring the bell or blow the whistle can have no causal connection with the injury complained of. To constitute actionable negligence the causal connection between the negligence and the injury must be by natural and unbroken sequence without intervening cause. Louisville & Nashville R. R. Co. v. Davis, 236 Ala. 191, 181 So. 695.

 As to the question of negligence after discovery of plaintiff's peril, it becomes the duty of the court to determine at what time plaintiff's peril arose. As pointed out the evidence shows without conflict that the plaintiff was at all times in a position of safety until he reached out his hand and

struck the train with his hand. As pointed out the engine had already passed and the engineer and fireman had then no opportunity whatever to observe him. The evidence shows without dispute that the other members of the crew were in such positions that they could not see and did not see what was happening on the path south of the track upon which the train was traveling. It affirmatively appears that there could have been no negligence on the part of the servants or agents of the defendant in charge of the train after discovery of the plaintiff's peril. Under these facts so far as § 173, Title 48, Code of 1940 is concerned, there was no burden on the defendant to prove want of negligence after discovery of plaintiff's peril. Atlantic Coast Line Railroad Co. v. Flowers, supra.

 The point is made that the evidence shows that there was a rail lying along the path which was on the right of way, that it was an extra rail and that the plaintiff was following this rail. The idea seems to be that there was some negligence in the maintenance of the right of way in that this rail was permitted to lie on the right of way. It is self evident however that it is necessary at times to repair the track and in this connection rails are laid upon the right of way where they can be used in replacement of defective rails. In the present case the insistence is made that this rail was lying obliquely and that the plaintiff followed this rail and came too close to the train by following the rail. There was obviously no duty, however, upon the defendant to place the rail as a guide for trespassers to use in walking. It might also be noted that according to the plaintiff the headlight of the engine was burning. Certainly he had every opportunity to know and in fact testified that this was a loose rail. In other words, it affirmatively appears that there was no justification whatever for his following this rail as a guide.

Counsel for appellant in this connection cite the case of Nashville C. & St. L. Ry. v. Blackwell, 201 Ala. 657, 79 So. 129. That case was a case where a roadway was blocked by a railroad company by the use of a rope. The particular roadway led by

the depot and was used by persons going to the depot on business in connection with the railroad company. The road also led to another piece of property which was owned by the railroad company and leased to persons occupying the property. The lessee was Orgain and Pollard and on the occasion when the plaintiff's injury was sustained the plaintiff was returning from the coal yard of Orgain and Pollard. It was held in that case that the evidence showed an implied invitation to the public as well as to those having dealings with the tenants of the railroad to proceed along this roadway and use it. This created an obligation on the part of the railroad not to block the street. It is obvious that there is no such situation presented in the case at bar.

III. It is argued that the court erred in allowing the defendant to offer an ex parte statement made by the plaintiff to W. J. Shaw, Claim Agent for the defendant. The evidence shows that the defendant had already admitted making a statement to this witness and when the statement was read to the plaintiff, plaintiff said parts of it were correct and parts were incorrect. The witness was permitted to read the statement which he wrote out and which he said was the statement made to him by plaintiff at a certain time and place. This statement related to the accident in which plaintiff suffered his injury. According to the witness the statement was not signed because the plaintiff could not write on account of injuries to his hand. The theory is that a proper predicate had not been laid for the admission of the statement. Deal v. Hubert, 209 Ala. 18, 95 So. 349. It is sufficient to say that error, if any, in admitting the statement in evidence was error without injury as the court properly gave the affirmative charge in the case whether the statement was admissible or not.

The judgment of the lower court must be affirmed.

Affirmed.

LIVINGSTON, C. J., and BROWN and LAWSON, JJ., concur.