Eugene **HENTLEY**, who sues by his next friend and Mother, Dardanella Hentley, Appellant,

v.

**ATLANTIC COAST LINE RAILROAD COMPANY**, Appellee.

No. 15423.

United States Court of Appeals Fifth Circuit.

Aug. 18, 1955.

Wilbur G. Silberman, Birmingham, Ala., for appellant.

Peyton D. Bibb, Birmingham, Ala., Graham, Bibb, Wingo & Foster, Birmingham, Ala., of counsel for appellee.

Before RIVES and CAMERON, Circuit Judges, and DAWKINS, District Judge.

RIVES, Circuit Judge.

This appeal is taken from an adverse judgment entered upon a directed verdict for appellee, granted at the conclusion of appellant's testimony in his suit for damages for personal injuries sustained as a result of the alleged subsequent negligence of appellee's train crew. After the trial court had granted appellee's motion to dismiss both a simple negligence and a subsequent negligence count in the original complaint, the case was tried solely upon a third count charging subsequent negligence by appellee after discovery of appellant's peril, and upon a pre-trial order purporting to limit appellant's theory of recovery to subsequent negligence, and the defenses to the general issue and subsequent contributory negligence.[1]

Appellant specifies error principally in the court's direction of the verdict for alleged insufficiency of the evidence;[2] in its refusal to permit a re-

---

1. The pre-trial order reads:

"This cause coming on to be heard on a regular pre-trial hearing, and all parties being present in person or by counsel, the following action was thereupon taken:

"1. The following pleadings and amendments were allowed:

"Complaint, consisting of Count III, and Answer.

"2. It was agreed by all of the parties that the following are all of the issues in controversy in this cause:

"Suing by next friend and basing his claim only on subsequent negligence, plaintiff claims of defendant $50,000 damages for personal injuries proximately resulting from the negligent failure of defendant's trainmen to exercise due care after discovery of his peril.

"Defendant pleads the general issue and subsequent contributory negligence.

2. The trial court informed the jury as to its reasons for instructing the verdict as follows:

"Gentlemen, as is my custom I am going to try to give you the benefit of my thinking which leads me to direct a verdict in favor of the defendant in this case. The plaintiff based his claim on what is known in legal terms as subsequent negligence. Under the evidence in the case the plaintiff was a trespasser on the railroad track along which the defendant train was running. Under that

quested trial amendment adding another simple negligence and a wanton count, as inconsistent with the pleadings and pre-trial order;[3] and in its further re-fusal to permit appellant's voluntary dismissal without prejudice in lieu of instructing the verdict.[4] Since the latter two contentions attack the trial court's

circumstance the duty which would be owed by the defendant would be this. After discovering, after having become actually aware of the presence of the child, the plaintiff, on the track ahead of him, it would then have been the duty of the defendant after having discovered the plaintiff's peril to have used every means at hand to avoid injuring the plaintiff. I have searched the evidence and my recollection of it with more than customary care in this case because of the fact that the plaintiff is a child of tender years. Naturally one would not be human if he did not sympathize with a child who sustained that kind of an injury and I do sympathize with him, but the defendant does not stand in the position of an insuror. Before the defendant could be responsible there must have been evidence from which you gentlemen could find that the members of the defendant's crew saw the child on the tracks in a position of peril and after having become acquainted with its position of peril must have done some act or failed to do some act which a reasonably prudent person would have done under the same or similar circumstances. I find no such evidence.

"The answer to interrogatories which were offered in evidence and which were not read to you made under oath by the defendant said that no member of the defendant's crew ever saw the child at any time. So I just find no evidence in the case which would justify anybody finding as a fact that the members of the train crew became aware of the child's presence on the track. That is the basis on which I feel it required by the law of Alabama to direct a verdict in favor of the defendant."

3. In first ruling upon the admissibility of appellant's testimony tending to show public use of the path along appellee's track upon which appellant was walking when injured, the court observed:

"The Court: I have looked into it. Of course the evidence of the use of a path along the side of a railroad track and the knowledge of that use by the members of the crew of the train would certainly be relevant with respect to the charge of wanton injury and it would be (sic) irrelevant to the charge of simple negligence. However the issue as stated in the pre-trial order has circumscribed that issue in this case. There is a re-liance on subsequent negligence and that is the only issue suggested in the pre-trial order. The question of whether or not a path or a right-of-way adjacent to a railroad track is being used constantly by the public as I see it would be irrelevant as to whether or not there was negligence after discovery of the peril. I find no case that held it would be relevant on the issue of subsequent negligence the way it is defined by the pre-trial order.

"Mr. Rice: Your Honor we would like in view of the evidence to amend our bill of complaint and the pre-trial order to include a count of simple negligence.

"Mr. Bibb: Would the court like to excuse the jury while we are talking?

"The Court: No, I think not, because as I understand it we took the matter up on Friday afternoon after the recess and there was no opposition by the defendant to another amendment to the pre-trial order and in view of the fact that this pre-trial order was entered on the 22nd day of January and in view of the fact that the case was called for trial on the March docket of this Court, which was on the eighth day of March 1954, continued on account of the absence of one of the Plaintiff's witnesses and in view of the further fact that the case was set on this docket and notice put out in August and there was no motion to amend the pre-trial order I would not permit the amendment of that order at this time to inject into this case really a new and distinct cause of action.

"Mr. Rice: I submit your Honor, that the evidence has developed a matter which also would include simple negligence in the evidence and I think under our rules we can amend at any time where the evidence might be sufficient evidence to carry the case to the jury on the question of simple negligence, that you have a right to amend your pleadings to conform with it.

"Mr. Bibb: We object to the statement of counsel and the conclusion he makes.

"The Court: Well I would not permit the modification of the pre-trial order.

"Mr. Rice: We except."

4. In this connection, the court stated:

"Well I understand the discretion with which Rule 41 invest the trial court. I am of the opinion that in view of the

discretion, and we think no abuse of its discretion in those rulings is here shown which would justify review, the only remaining issue presented for our determination is that of the sufficiency of the evidence to require submission.

The testimony reveals that appellant, then approximately 8 years of age, was returning from school with several companions walking along in a path on the south side of a track upon which appellee's train was traveling, and between the intersections of that track with Fourth Street and Third Streets, North, in the City of Birmingham, Alabama, about 3:-30 or 4:00 p. m. during daylight on the afternoon of January 12, 1953; that, according to his testimony, he did not see appellee's train before it struck him, but was trying to pick up some papers from a notebook he had dropped on the track when "the front part" of appellee's two-engine train cut off his leg; that he heard no train whistle or warning bells ring beforehand and only saw the train "a little bit before I was hit," when "I was too scared to move;" that Louise Reed, who lived "about fifty feet" from the Fourth Street crossing, testified she saw appellant drop his notebook on the track and stop for several minutes to pick up some papers, but that she did not actually see the train strike him, though she noticed afterwards that it had one of appellee's "purple and white" engines pulling and one pushing it; that she did not see the train coming beforehand or hear it blow, though it was traveling "pretty fast" away from Birmingham along a curved section of track where one could see "about two blocks" ahead, and never slowed down or stopped; that she saw some men on the back engine, numbered "670", who were "facing the way the train was going," but "didn't pay any attention to the front one;" and that after the accident a nearby telephone lineman gave her a piece of wire with which she fashioned a tourniquet for appellant's leg to stop the bleeding. In response to further questioning by the court, Louise Reed testified:

"The Court: I believe you have stated that you did not see the train strike the boy.

"The Witness: I did not.

"The Court: Did you see enough to know by the evidence of your own eyes whether he was struck by the front engine or the middle of the train or the rear of the train? From what you saw could you tell? I am not asking what you heard, but what you saw.

"The Witness: No sir, because when I got up to him, I asked him what part of the train hit him. He never lost consciousness. He tole me, he said 'That engine.' I said 'Which one?' and he said 'That one there.' And it was going around.

"The Court: The one that was pushing on the rear end?

"The Witness: Yes, sir. That is what made me know to get the number, because it didn't stop.

"The Court: And then you did take the number off the rear engine that was pushing?

"The Witness: Yes, sir.

"The Court: And you say it was 670?

"The Witness: Yes, sir."

Two other witnesses for appellant, John Johnson and Lucy Mae Barrow, identified the train involved as belonging to appellee, and Johnson testified that the engines were on the front and had none "on the back when it passed me," though neither of these witnesses actually saw appellant injured. Consistent with its ruling heretofore quoted (footnote 3, supra), the court excluded further testimony as to the use by schoolchildren of the path where appellant was

history of this litigation and the costs which have been incurred in connection with the first setting of this case in March and also of this particular setting that the motion should not be granted except upon full payments of the costs

and expenses incurred by the defendant and I understand that the plaintiff cannot do that so I am going (sic) overrule the motion to dismiss without prejudice.

"I am going to grant the motion of the defendant for a directed verdict."

walking when injured, though it later modified that ruling so as to permit appellant to offer such testimony solely on the issue of whether "the defendant's agents were actually aware of his position of peril" at the time of his injury. Louise Reed, John Johnson, and appellant's grandmother, Lucinda Garnett, were then recalled and testified over appellee's objection to the frequent use of the path and track crossing by schoolchildren and the public generally, and that the path and crossing ran beside and across tracks upon which appellee's trains made regular, daily trips. Appellant's counsel then renewed his request for a trial amendment before direction of the verdict, as follows:

"Mr. Silberman: Your Honor, at this time in view of the evidence which has just been adduced, in line with the Alabama cases we would like to amend our complaint and add two counts, one on simple negligence and one on willful or wanton conduct of the defendant.

"The Court: Do you object?

"Mr Bibb: Yes, sir, we object. We have had no opportunity to see them.

"The Court: I will sustain the objection.

"Mr. Rice: We except. We rest, your Honor."

In Alabama, one who merely crosses over the tracks of a railroad is not a trespasser. Rush v. Central of Georgia Ry. Co., 223 Ala. 119, 134 So. 619, 621; Birmingham Ry. Light & Power Co. v. Jones, 153 Ala. 157, 45 So. 177, 179. In the case last cited the Supreme Court of Alabama said:

"So it is the settled doctrine of this court that while a person may, for the purpose of merely crossing a railroad, do so without becoming a trespasser, yet if he lingers on it, or walks along it at a place where he is not entitled to walk, he is a trespasser, and the company owes him no duty to keep a lookout for him. * * *

"The contention of the appellant in no wise conflicts with the further doctrine, which is settled by this court, that it is the common-law duty of a motorman, running a street car in a populous town or city, to keep a lookout for persons rightfully on the track and liable to be run over by the cars. * * * actionable negligence being a failure to discharge a legal duty to the person injured, if there is no duty there is no negligence. And even if the defendant owed the duty to keep a lookout for persons rightfully on the track, but owed none to the plaintiff because she was a trespasser, no action will lie, for the duty must be to the person injured." 45 So. 177 at pages 179–180.

In that case, it was further held that the general principle that a railroad company owes to a trespasser no duty to keep a lookout for him applies to railroads in city streets, as well as elsewhere. See, also, Glass v. Memphis & C. R. Co., 94 Ala. 581, 10 So. 215, 218; Watts v. Atlantic Coast Line R. Co., 256 Ala. 352, 54 So.2d 601, 605; Louisville & N. R. Co. v. Johns, 258 Ala. 440, 63 So.2d 574, 579. In Watts v. Atlantic Coast Line R. Co., 256 Ala. 352, 54 So.2d 601, 605, the Alabama Supreme Court further stated:

"Evidence that persons living in the neighborhood or the public use the railroad way for longitudinal passage for their own convenience is admissible in connection with other evidence to show wanton or wilful injury on the part of the agents or servants of the railroad company in charge of the train. Southern Railway Co. v. Stewart, 179 Ala. 304, 60 So. 927; Illinois Central Railroad Co. v. Martin, 213 Ala. 617, 105 So. 805; Northern Alabama Ry. Co. v. Guttery, 189 Ala. 604, 66 So. 580; Clark v. Birmingham Electric Co., 236 Ala. 108, 181 So. 294. Notoriety and duration of the public use are important only as tending to charge the company's servants with knowledge of conditions in the ab-

sence of direct proof of their actual knowledge. Southern Ry. Co. v. Stewart, supra. But such evidence of the use of the right of way as a passageway does not raise any conflict in the evidence so as to prevent the giving of the affirmative charge for the defendant. Callaway v. Griffin, 245 Ala. 598, 18 So.2d 547. Plaintiff's right of recovery must be tested not by the duty owed to the general public under the evidence, but by the duty owed to plaintiff under the particular conditions shown by the evidence."

Under the Alabama law, no more duty is owed to an infant trespasser than to an adult. Birmingham Ry. Light & Power Co. v. Jones, supra. In Callaway v. Griffin, 245 Ala. 598, 18 So.2d 547, 550, it was said:

"It may be further observed that all of our cases are to the effect that an essential of guilt of subsequent negligence means not imputed knowledge, but that, as stated in Louisville & N. R. Co. v. Griffin, 240 Ala. 213, 198 So. 345, 'In order to predicate liability upon railroad for "subsequent negligence" railroad must be shown to have had actual knowledge of plaintiff in a perilous position and thereafter negligently fail to use all means at its command and known to skillful engineers so circumstanced to avert injury to the plaintiff when to have promptly and duly used such means could have averted the accident.' See also Young v. Woodward Iron Co., 216 Ala. 330, 113 So. 223."

Appellant concedes, as he must, that under Alabama law, the plaintiff cannot recover on the subsequent negligence count unless it be shown that the defendant, or its servants, had actual knowledge of the plaintiff's peril prior to the injury, but appellant insists that there was sufficient evidence from which such actual knowledge could be inferred,

"among which are that the point of the accident was at a place frequently used by the people of the community, within a populous city, in broad light, along a level stretch of road, that the Appellant was standing before being struck and further that the Defendant frequently used the tracks where it happened."

At least one essential link in the chain of circumstances relied on by appellant is missing, viz.: there is no testimony that appellee's engineer or other employees were actually maintaining a lookout, and, as we have seen, no duty of lookout was owed to the plaintiff, himself a trespasser. The jury was not authorized to infer both that a lookout was being maintained and that plaintiff's peril was discovered in the face of the positive and uncontradicted testimony in defendant's answers to interrogatories introduced by the plaintiff that it knew nothing of the accident, and that "the plaintiff was not seen by any employee of this defendant to be on the track ahead of, or otherwise in a position of peril from, any train of this defendant." The district court had no proper course to follow, under the evidence in this case, except to direct a verdict for the defendant. The judgment is, therefore,

Affirmed.